WILLIAM RICHARDSON *vs.* MICHAEL STILLINGER.—*December*, 1842.

By the well established practice of the Court of Chancery, no cause is ready for hearing, until the commission under which testimony has been taken, has been returned to the chancery office, and there remained for the period of one entire term.

By the rules of *Baltimore* county court, the commission and testimony must remain in court for the period of twenty days before the case is ready for hearing.

Where a commission was sued out on the 14th; returned on the 17th; removed to the Court of Chancery from *B.* county court on the 22nd, and a decree passed on the 24th of the same month, the decree was prematurely passed under the act of 1820, chap. 161.

The general rule is, that a court of equity is not to be resorted to for redress where full and complete remedy may be obtained at law.

There are some subjects over which courts of law and equity exercise concurrent power : such as fraud and matters of account.

Where plain, adequate and complete remedy may be had at law, a court of equity ought not to be resorted to.

If the personal estate of a deceased vendee is sufficient to discharge the vendor's equitable lien for a balance of unpaid purchase money, due for land sold, the real estate ought not to be sold for that purpose.

A bill in equity can be filed to enforce the vendor's lien, only when the complainant has exhausted his remedy at law, or where he avers such facts as will show, that he cannot have a full, complete and adequate remedy at law.

In requiring a vendor to exhaust his legal remedies, or show that he has none before proceeding in equity to enforce his equitable lien for the unpaid balance of the purchase money, he is not required to proceed by ejectment to re-possess himself of the land sold; nor by way of attachment or *fieri facias* to seize and sell the land sold by him in the hands of the vendee.

A court of equity never requires a complainant to do a nugatory act, nor an act which may impair his equitable rights.

Richardson *vs.* Stillinger.—1842.

A sale by a vendor of the land sold to his vendee by execution, would be sub-
ject to all judgments, liens and outstanding equities, existing anterior to
the date of the judgment against such vendee, and upon which the execu-
tion issued.

Appeal from the Court of Chancery.

On the 29th May, 1841, *Michael Stillinger* filed his bill on
the equity side of *Baltimore* county court, alleging, that on the
6th October, 1840, he sold to *William Richardson* a lot of
ground in the city of *Baltimore*, &c., for the sum of $3,560, to
be paid one-third in cash, two-thirds in six and twelve months,
with interest; that *Richardson* made the cash payment, and
executed his two obligations for the credit payments; that the
note at six months is long since due and unpaid, though pay-
ment has been often demanded.    Prayer for a decree for a sale
and payment of the balance of the purchase money.  A subpœna
was issued, and the appellant appeared to the cause, but neglec-
ting to file an answer, a commission was ordered and issued
on the 14th September, 1841.    The sale was proved, and the
notes of the appellant for the purchase also proved, and filed with
the commission on the 15th September, 1841.   On the 22nd
of that month, the cause was moved to the Court of Chancery,
on the application of the complainant.    On the 24th Septem-
ber, 1841, the Chancellor (Bland,) decreed a sale.    On the
11th January, 1842, the defendant appealed to this court.

The cause was argued before Buchanan, C. J., Stephen,.
Archer, Dorsey and Chambers, J.

By Murray for the appellant.
No counsel appeared for the appellee.

Stephen, J., delivered the opinion of this court.

This case originated on the equity side of *Baltimore* county
court, and was removed to the court of Chancery in virtue of
an act of Assembly, passed for that purpose in the year 1824,
chap. 196, and by a rule of the court of Chancery, passed in
the following year, it was to be proceeded in, heard and deter-
mined, in like manner as if it had been originally instituted
in that tribunal.

By the well established practice of that court, it is under-stood, that no cause is ready for hearing, until the commission under which testimony has been taken, has been returned to the chancery office, and there remained for the period of one entire term. According to the rules of *Baltimore* county court, the commission and testimony must remain in court for the period of twenty days, before the case is ready for hearing. The commission in this case, it appears, was issued on the 14th day of September, 1841; was returned on the seventeenth day of the same month. The cause was removed to the court of Chancery on the 22nd September, 1841, and the decree passed in that court on the twenty-fourth of the same month. The act of 1820, chap. 161, under which the commission in this case issued, provides, that the commission which shall be issued for the taking of testimony to support the allegation of the bill, "shall be issued, proceeded in, and returned in the same manner, and the testimony taken and returned under it, shall have the same effect as if issued and returned in the usual way, on answer, general replication and issue, and the court shall proceed to a final decree, in the same manner as if the defendant or defendants had appeared and put in their answer." Under this view of the case, it appears that the decree of the court below was passed prematurely, and before the cause stood regularly for hearing before that jurisdiction, according to the provisions of the act of Assembly, and its established practice in such cases. The decree of the Chan-cellor was therefore erroneous, and ought to be reversed.

It was also contended by the appellant, that the appellee had full and adequate remedy at law, and therefore, should not have resorted to a court of equity for relief. Whether, under the circumstances of his case, a court of Chancery was the proper forum to administer justice for the wrong of which he complained, is a question of no inconsiderable magnitude, in point of principle, and is not entirely free from difficulty. The general rule no doubt is, that a court of equity is not to be resorted to for redress, where full and complete remedy may be obtained at law; and that of most of the judicial controversies

between man and man, a court of law is the proper tribunal to take cognizance. At the same time, it must be admitted, that there are many questions arising in the administration of civil justice, the decision of which belongs exclusively to a court of equity, as the appropriate jurisdiction. It is likewise true, that there are some subjects over which a court of law and equity exercise a concurrent power, such as fraud and matters of account. Conformably to this view of the line which separates the two jurisdictions, and which ought always to be maintained inviolate; the Congress of the *United States*, in organizing the judiciary department of the Federal Government by the act of 1789, provided, "that suits in equity shall not be sustained in either of the courts of the *United States*, in any case where plain, adequate and complete remedy may be had at law." This is the rule adopted by the Federal courts in the administration of equity jurisprudence, and it would seem to be the true doctrine which ought to prevail wherever the principles of law and equity are administered by separate, distinct and independent jurisdiction as different parts of the same system. In 2 *Henning & Mumford Rep.* 146, that distinguished jurist, *Judge Roane*, speaking upon the subject of the relative powers of courts of law and equity, holds the following impressive and emphatic language—"considering the natural and progressive tendency of the jurisdiction of the chancery to encroach upon that of the common law courts, and thus not only to lose the advantage of jury trial, and *viva voce* examinations, but also to give a man the benefit of his own testimony, that jurisdiction, however salutary and valuable, should not be extended to the overthrow of the jurisdiction of the courts of common law, nor ought the land-marks established by this court in relation to this subject, lightly to be departed from." So in the 4th volume of the same reports, page 470, the Chancellor for the superior Court of Chancery for the *Richmond* district, speaking upon the subject of his own jurisdiction, expresses himself in the following terms: "If the law affords an adequate remedy in this case, the application to this court is improper; but if the law does not, this is then the

proper court." Again, in 471, he says—"the true course for a Chancellor is never to interpose, if the matter can be adjusted at law, and the best interest of the people requires that this rule should be adhered to." These are some of the views which seem to prevail in the courts of a sister State, upon this important and interesting subject; and they are not novel in their character, but in perfect consonance, it is believed, with those which have always been entertained by our own tribunals.

In the case of *Pratt vs. Vanwyck's Ex'rs.*, 6 *Gill & John.* 495, the learned judge who delivered the opinion of the court in the course of his reasoning, lays down the following principle: "If the vendor can, by any proceeding at law, recover the amount due him, chancery never interferes to enable him to assert his equitable lien. His remedy at law must be first exhausted, or it must be shown that none exists there. For the support of which doctrine he refers to 1 *John. C. Rep.*, 308. That was a bill to enforce the vendor's lien, who had conveyed the legal title, after an ineffectual attempt to recover the purchase money at law, against the personal representative of the vendee, who pleaded *plene administravit* to the suit, and the plaintiff being unable to prove assets in her hands, took judgment for assets *in futuro*, for the amount of his claim, and the costs of suit. In that case *Chancellor Kent* says— "The failure of the personal estate is sufficiently shown in the first instance, and there is nothing to gainsay it; and I shall accordingly decree a sale of one-third of the house and lot towards satisfaction of the note;" the one-third of the house and lot being the thing sold, for which the note was given. If the complainant was entitled to go into equity in the first instance, to enforce his equitable lien, the failure of the personal estate was in that case a matter of no importance in the assertion of that right. In the case of a mortgage, where the creditor is under no obligation to look to the personal estate of his deceased debtor, the personal representative need not be made a party. See 2 *Harr. & Gill*, 97. In 6 *Gill & Johnson*, 107, this court seem to have entertained the

same views as to the liability of the personal estate in the first instance, and that was a case where the legal title had been retained by the vendor, who had only given a bond of conveyance. The court there say—"In the event of the personal property proving insufficient to pay the complainant's claim, the land would have to be sold for the purpose of paying the purchase money." Again, they say in the same case— "For such excess the complainants would have clearly a lien for the purchase money, and could recover it by a sale of the land, unless the administrator has assets wherewith to discharge and pay the purchase money." The irresistible inference of course to be deduced from those principles was, that if the personal fund was sufficient to discharge the equitable lien, the real estate could not be sold for that purpose. These views of this court are sustained by the very respectable authority of *Sugden on Vendors*, 394, 395, where he says— "On sale of the estate, the purchase money becomes a debt, payable out of the purchaser's personal estate, and the equitable lien ought, it is conceived, to be extended to only so much of the purchased estate as the personal estate is insufficient to answer. The vendor has not an original charge on the estate, but only an equity to resort to it, in case the personal estate prove deficient." If this doctrine be correct, and it is cited with approbation by *Cross on Law of Lien*, 77, 98, it proves to demonstration, that the personal estate of the purchaser is the primary fund for the payment of the vendor's claim, and that the real estate is only to be auxiliary to it as a secondary fund, when the personal estate shall prove inadequate. A bill in equity can therefore be filed to enforce the vendor's lien only, when the complainant has exhausted his remedy at law, or where he avers in his bill such facts as will show, that he cannot have a full, complete and adequate remedy at law. In requiring the vendor to exhaust his legal remedies, or show that he has none, before proceeding in a court of equity to enforce his equitable lien for the unpaid balance of purchase money, we are not to be understood as requiring him, where such a remedy is open to him, to proceed by ejectment to re-possess

himself of the land sold. A recovery in such an action is no adequate remedy for the recovery of the money due. Nor do we require the vendor by way of attachment or *fieri facias*, to seize and sell the land purchased, in the hands of the vendee. A court of equity never requires a complainant to do a nugatory act, nor an act which may probably work injustice, or impair his equitable rights. Such a seizure and sale could only transfer the interest of the vendee, at the date of the judgment, or of the issuing or levying of the attachment, and would be subject to all judgments, liens, and outstanding equities, existing against the vendee anterior to that time. All such secret or known equities would remain unimpaired by such a judicial sale. The benefit resulting to the vendor by the sale, might not, therefore, be commensurate with his equitable lien, and he would afterwards come with an ill grace into a court of equity, (if indeed he could come at all,) seeking to sell the original entire interest of the vendee in the property, and thereby annihilate the title of a purchaser acquired under a judicial sale, made at his, the vendor's instance, and for his benefit.

There are two cases which have been decided in this court, to be found in 10 and 11 *Gill & John.* the first at page 387, the last at page 103. These were cases marked by peculiar circumstances. The vendors in both cases were out of the State, and beyond the jurisdiction of our courts of law, after the purchases were made, and in the first case, the vendee, previous to his departure, had conveyed all his estate, of every description, in contemplation of marriage, to the separate use of his intended wife, to whom he was afterwards actually married. In this case the decree of the Chancellor dismissing the complainants bill was reversed by the Court of Appeals: the bill of complaint taken *pro confesso*, and the land decreed to be sold for the payment of the purchase money. In the second and last case, the bill charged that the complainant had no means of obtaining the money due for the land sold, except by enforcing his equitable lien; an order of publication was passed and published, and the Chancellor dismissed the bill, on the ground, that he had no jurisdiction, because the com-

plainant had a remedy in a court of law. The Court of Appeals reversed the decree of the chancery court, and remanded the cause for further proceedings. In neither of these cases was there that plain, adequate and complete remedy at law, which would oust the jurisdiction of a court of equity, and therefore, the equitable lien was properly enforced, to compel payment of the purchase money. In the present case, it does not appear that any obstacle existed to preclude or render unavailing a legal remedy for the recovery of the purchase money; and therefore, the court of Chancery had no jurisdiction to administer relief.       DECREE REVERSED.