Mr. Justice Wylie
stated the case, and delivered the opinion of the court:
This is a suit brought by the complainants for the purpose of enforcing the vendor’s lien for a part of the purchase-money claimed by them to be due from the defendant. The deed was for a house and lot in this city, and dated 23d November, 1871, and the consideration expressed was $7,000, paid by the defendant. Defendant, by his answer, denies that any part of the consideration remains unpaid. The controversy has sprung from the following facts: Ford and Holden were partners engaged in erecting two blocks of houses for the purposes of sale, one on Second street east, and the other on Eleventh street west. Holden was at the same time, and had previously been, building other houses on his own account. Smith, the defendant, was a manufacturer of and dealer in doors, blinds, trimmings, &c., of which he had furnished a large amount, as well to Holden & Ford as to Holden individually, for which the parties were thus respectively indebted to him. A number of these houses being yet unfinished, and Smith objecting to furnish any more materials, either on account of the firm, or of Holden individually, the latter proposed that he should take one of the houses in the block on Eleventh street for $7,000, the firm to complete the house; and the proposal was accepted by Smith. The amount of the purchase-money somewhat exceeded the aggregate indebtedness to Smith of both Ford & Holden and of Holden individually, though only to the extent of a few hundred dollars. It exceeded the amount of the firm’s debt several thousand dollars. Smith was to renew the credit till the materials to be supplied should equal the amount he was to pay for the house. Accordingly, the deed was executed by both Ford and Holden and their respective wives, and delivered to Smith by the hand of Holden. The credit was renewed, and materials sold and delivered by Smith to the firm, and to Holden individually, until the amount of the two accounts together was equal to the purchase-money on *595 the houses, when Smith declined to deliver any more, claiming that Ford and Holden had both agreed that the individual account of the latter, as well as that of the firm, should be credited upon the purchase of the house. On the other hand, both Ford and Holden claimed that nothing but the firm’s debt was to be applied in that way. If the defendant was right upon this question of facts, the house had been paid for, and more; if the complainants were right, there still remains a very considerable amount of the purchase-money unpaid.
In consequence of this disagreement, Ford & Holden declined, or at least neglected, to comply with their contract to finish the house, and Smith was obliged to have that work done himself, at a cost to him of about $600, and considerable delay, for which he is entitled, in any event, to be credited on account.
All the orders, both on his account and on account of the firm, were given by Holden, and the negotiations for sale of the house were conducted- alone between him and Smith, without the presence of Ford, and without a line in his writing.
The testimony on the subject is, chiefly, that of the parties themselves, and, as might be expected, is in direct conflict. That of the defendant, however, receives some corroboration from the testimony of his book-keeper. The circumstances of the parties, and the natural probabilities, seem to favor the other side.
Either way, it is a close case, and one about wdiose facts a court of equity would find it very difficult to determine the preponderance. It presents a case peculiarly appropriate for trial by jury, where the witnesses appear in person, are examined orally, subjected to searching cross-examination on the occasion, and may receive that degree of credit to which each may be entitled after having been subjected to these tests.
And this brings to us the question whether a court of equity possesses jurisdiction to enforce specifically what is generally called the vendor’s lien for unpaid purchase-money before the existence of the debt has been determined by a judgment at law. If the debt were a specific lien, like that of a mortgage, or deed of trust, or even a general lien like that of judgment, whose existence and character appear on its *596 face, the jurisdiction would be unquestionable. But the lien in question, at best, is only a tacit one, and whether it exist at all is always dependent on facts and circumstances dehors the record, and subject to controversy as to the facts. In Sug-den on Vendors, 394, its character is thus described: “On sale of the estate the purchase-money becomes a debt payable out of the purchaser’s personal estate, and the equitable lien ought, it is conceived, to be extended to only so much of the purchased estate as the personal estate is insufficient to answer. The vendor has not an original charge on the estate, but only an equity to resort to it, in case the personal estate proye deficient.” In Gilman vs. Brown, 1 Mason R., 192, it was said by Mr. Justice Story that “the vendor’s lien is not of so high and stringent a nature as that of a judgment creditor, for the latter binds the land according to the course of the common law, whereas the former is the mere creature of a court of equity, which it molds and fashions according to its own purposes. It is, in short, a right which has no existence until it is established by the decree of a court in the particular case, and is then made subservient to all the other equities between the parties, and enforced in its own peculiar manner and upon its own peculiar principles. It is not, therefore, an equitable estate in the land itself, although sometimes that appellation is loosely applied to it.”
In Garson vs. Green et al., 1 Johns. Ch. R., 308, the lien was enforced ; but, in that case, a note had been given for the unpaid purchase-monéy, on which a judgment at law had been first obtained by the vendor before filing his bill, the chancellor saying: “ The failure of the personal estate is sufficiently shown in the first instance; and there is nothing to gainsay it, and I shall accordingly decree a sale of the one-third of the house and lot toward satisfaction of the note.”
In Pratt vs. Van Wyck's Executors, 6 Gill & J., 495, the court : “If the vendor can, by any proceeding at law, recover the amount due him, chancery never interferes to enable him assert his equitable lien. His remedy at law must first be exhausted, or it must be shown that none exists there.” The same principle was re-asserted in Richardson vs. Stillinger, 12 G. & J., 477, in an elaborate opinion, and again in Ridgway vs. Toram, 2 Md. R., 203. In this last case the court say:
*597 “ In this case, though fraud is charged, the complainants have chosen to affirm the agreement, and bring an action (suit f) for the non-performance of it by the defendant, and, offering the agreement, seek to enforce its stipulations against the defendant by compelling him to pay the purchase-money, which, it is alleged, is a charge upon the land. It is a bill, then, to enforce the vendor’s lien for the purchase-money of land sold and conveyed; and the question is whether it charges such facts as, according to well-established principles, «will justify this court in extending its aid to him. The rule upon this subject, too well-established to be disputed, is this : that a bill in equity can be filed to enforce the vendor’s lien only when the complainant has exhausted his remedy at law, or when he avers in his bill such facts as will show that he cannot have a full, complete, and adequate remedy at law.”
To these authorities may be added the opinion of the learned American annotators on Smith’s Leading Cases in Equity, vol. 1, pp. 366 and 373.
It is true that the courts of Kentucky and Tennessee have taken a different view of the nature of the vendor’s lien, and have treated it as a mortgage which the vendor might enforce in equity, in the first instance, without having obtained a judgment, or taken any steps whatever at law. (See High vs. Batte, 10 Yerger, 186; Richardson vs. Baker, 5 J. J. Marshall, 323; and Galloway vs. Hamilton’s Heirs, 1 Dana, R., 576.
But the weight of authority, we think, is on the other side.
The bill in the present cases sets out neither a judgment at law, recovered for the debt in controversy, nor the insolvency or non-residence of the defendant, nor any other ground for the jurisdiction of a court of equity than the simple claim of an original vendor’s lien, which it seeks to enforce by a decree in the first instance. The answer as well as the evidence, on the part of defendant, strongly deny the existence of the debt itself. There is no written evidence to establish it; the defendant is in possession of an absolute deed for the property, executed by both the complainants and their respective wives, which acknowledges full payment of the purchase-money; and the testimony, taken altogether, leaves the mind in doubt how the disputed fact ought to be decided.
For these reasons, we think the decree below should be affirmed.