# DAVID PEOPLES

*vs.*

# DAVID V. AULT.

*Municipal contracts: sums paid for "removing difficulties with engineer"; no equitable accounting.*

Where an employee of a contractor engaged on public work for a municipality is also a member of the City Council, and receives from the contractor large sums to be expended in "removing difficulties" with the City Engineer, it is not such a claim as commends itself to a court of equity in an accounting to determine net profits.                           p. 405

But a party interested in a share of the profits is not bound by such payments, when they nowhere appeared upon the books and he had no personal knowledge thereof.                           p. 405

*Decided April 26th, 1916.*

Appeal from the Circuit Court for Baltimore City. (ELLIOTT, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Weems Williams* and *James McEvoy* (with whom was *W. B. Saul* on the brief), for the appellant.

*J. Kemp Bartlett* (with whom were *Edgar Allan Poe, L. B. Keene Claggett* and *Robt. D. Bartlett* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This being the third appeal of this case to this Court a brief history of the litigation to the time of this appeal will suffice. The previous appeals are found in 117 Md. 631 and 125 Md. 698, the latter being among the unreported cases.

The appellant is a contractor for public works and the appellee was his superintendent in charge of four separate contracts for the building of sewers respectively at Philadelphia, Oradell, New Jersey, Reading, Pa., and Baltimore. After the completion of the Baltimore work the parties had a disagreement and in April, 1911, the appellee filed a bill of complaint against the appellant for a discovery and accounting and for a decree of payment. The theory upon which the bill was filed was that the contract of employment provided that not only should the appellee receive a certain sum monthly as wages, but that in addition he should receive ten per cent. of the net profits, if any, from each contract. It was admitted the wages had been paid in full. So far as the appellee's interest in the Oradell contract was concerned the profits were conceded to have been negligible. But the profits on the Philadelphia, Reading and Baltimore ones were claimed to have been substantial, but to have been fraudulently concealed by the appellant. It was admitted that sixteen thousand dollars had been paid on account of the profits on the Reading contract, but a claim was made for an additional amount, on the theory, that the separate expense account of the appellant, whereby the profits on that work were reduced from $247,000.00 to $160,000.00, was grossly and falsely over-estimated. The question involved on the first appeal was one of pleading, and this Court dismissed the appeal and that need not be further adverted to.

After a great deal of testimony had been taken, the lower Court found that the contract was as alleged by the appellee, that is that he was entitled, under the agreement, to ten per cent. of the net profits on each contract, and further found that the net profits on each of the contracts were as follows: Philadelphia, $16,000.00; Reading, $242,000.00, and Balti-

more, $15,148.00, or a total of $273,148.00, and decreed that the appellant should pay the appellee $11,134.80, the same being ten per cent. of the net profits found less the credit of $16,000.00. From that decree, the second appeal was taken, and, while this Court in its opinion agreed with the lower Court in its conclusion that the terms of the contract were as claimed by the appellee, and further agreed that the amount found as for the net profits of the Baltimore contract was correct, nevertheless remanded the cause without either affirming or reversing the decree, in order that further proof might be taken as to the Philadelphia and Reading contracts.

In the lower Court the appellee rested his case principally, so far as the Philadelphia and Reading contracts were concerned, on statements made to him by one Caldwell, a former bookkeeper of the appellant. As to the Baltimore contract, a full itemized statement was produced, which was admitted to be correct, with the exception of the extra expense claims of the appellant, over which the contest really was, and there was, therefore, no trouble in adjudicating that claim. But with the other two contracts, there were no statements before the Court showing the receipts and expenditures. The appellant testified positively that the books of accounts on those contracts had probably been destroyed, or, at any rate, had been lost and could not be found. A decree for an accounting under those circumstances would have been futile, and the lower Court being averse to allowing the appellee's claim to be defeated on that ground, concluded, that since the books would have been the best evidence and having been under the control of the appellant and not having been produced by him, to find the amount from the proof available.

Shortly after this decree, the appellant filed a bill of review, asking for a review and reversal of the decree, accompanied by an affidavit of himself and one by a party named William A. Whitman; alleging, among other things, in his own that since the taking of testimony he had found a complete set of books for the Philadelphia work and a consid-

erable number for the Reading work, and further that if an accounting was had, it would be shown that he had paid out of what purported to be the net profits of the Reading work, a sum amounting to $87,000.00 for legal expenses and costs and expenses rendered in connection with that work. The affidavit of William A. Whitman disclosed that he was the party to whom this sum was paid.

It was then, because of the belief, created by these affidavits, that the amounts could be more accurately and certainly arrived at, that the cause was remanded for further proof, under the authority of section 38 of Article 5 of the Code.

After the taking of the additional proof, the Court decreed that the amount due from the appellant to the appellee was $11,114.80, and from that decree this appeal was taken. The Court refused to allow the amount of $87,000.00 to be deducted from the gross net profits, and this constitutes the only error contended for by the appellant, he admitting the decree to be correct in every other particular. So the only question to be considered is whether the appellee should be allowed ten per cent. upon this amount as constituting a part of the net profits.

The books upon being produced showed that the net profits amounted to $247,000.00, but the lower Court found from the evidence that there were two payments of $5,000.00 and $2,000.00 respectively, which, although not appearing upon the books, were proper and legitimate charges against the profits. To establish the right to the deduction of the $87,-000.00, the payment of which nowhere appeared on the books, nor for which any checks, check stubs or recepits were produced, the appellant offered himself as a witness and produced the testimony of Whitman taken under a commission. It appears that Whitman, a machinist by trade, was a member of Select Council of Reading at the time he was employed by the appellant in March, 1907, to assist in removing difficulties he was encountering with the city's engineers, etc. No good purpose would be served in our setting out the

testimony as to what purpose this large sum was used. Suffice it to say that the testimony of both witnesses forces the conclusion upon us that this defense is not one which it is permissible to set up in a Court of Equity, and can not be considered in arriving at the legitimate net profits.

The appellant contends that if the above view should be entertained, that, nevertheless, the appellee should not be allowed to benefit by an enforcement of this rule, for the reason that he was equally as guilty of wrongdoing as himself. But the weight of the testimony is against this contention. The evidence of the appellee is positive that he had no knowledge of the employment of Whitman for the purposes indicated, and the testimony of the two chief actors in the transaction is not satisfying for its lack of definiteness. It is true, that the appellee had charge of the books, but it must be remembered that none of these payments was entered upon them, and it was admitted that the payments were made not by check, but in cash, in Philadelphia, whither Whitman journeyed time and again for that purpose.

As to the plea of the statute of limitations and the bar of the settlement made in January, 1908, it is sufficient to say, that if the appellee was entitled to more than was paid him at that time by reason of the net profits being reduced by expenditures the illegality of which fact was concealed from him by the appellant, the statute operates only from the time such fraud was discovered or could have been discovered by due diligence. Section 14, Article 57 of the Code. Under the facts in the record we are of the opinion that the appellee had no knowledge of what these extra expenses were for, and was led to accept them in making his settlement, as correct, by reason of his implicit confidence in the integrity of his employer.

*Decree affirmed, with costs to the appellee.*