**INSURANCE CO. OF NORTH AMERICA v. PARR et al. (two cases).**

**SAME v. DONNELLY et al.**

Nos. 2981–2983.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

John Henry Lewin and Alexander Armstrong, both of Baltimore, Md. (Armstrong, Machen & Allen, of Baltimore, Md., on the brief), for appellant.

W. Calvin Chesnut, of Baltimore, Md. (Haman, Cook, Chesnut & Markell, of Baltimore, Md., on the brief), for appellees.

Before NORTHCOTT, Circuit Judge, and BAKER and GRONER, District Judges.

GRONER, District Judge.

These are appeals from judgments of the District Court in three cases in which the appellees, respectively, were plaintiffs, and the appellant defendant. The parties plaintiff were not the same in each suit, and for this reason alone three separate actions were instituted, but the same questions are applicable in all three, and therefore for clarity, the appellant will be hereinafter spoken of as the company and appellees as plaintiffs. The trial court gave judgments against the company, for breach of contract to pay commissions, in an aggregate amount of $13,881.23.

Plaintiffs were, from 1914 to 1929, the agents and representatives of the company for the purpose of securing and writing insurance in Baltimore City. The respective obligations of the parties are embraced in a written contract in effect during the entire period. Plaintiffs claim to have earned commissions during each year of the period in question which have not been paid. The claim grows out of a clause of the contract providing for 5 per cent. contingent commissions on the net profits of the whole agency business for each calendar year—which were paid—and further providing that "should a larger contingent commission than five per cent. be granted to the agents in any other large city, then in that case the Baltimore Agents are to receive the same amount of contingent commission." Plaintiffs claim an additional 5 per cent. for each of the years in suit because of the payment by the company of 10 per cent. to its Boston agents. Company insists that a proper construction of the contract will not justify plaintiffs' claim to additional commissions, and in addition asserts that any rights of action for commissions prior to 1925 did not accrue within three years of the date of the filing of the suits and therefore are barred by the Maryland three-year statute of limitations. The District Court sustained the replication to the plea of the statute of limitations, and this is assigned as error.

Since the bar of the statute was again invoked in the trial on the merits, and the question then presented, in our opinion, incorrectly decided, we do not think it necessary to pass upon the alleged error of the lower court in sustaining the replications, but since a part of the claim asserted in the third suit is admittedly not barred by the statute, it becomes necessary to pass upon the main question, and this involves a construction of section 1, subsection 7, of the contract. This subsection we have quoted above. In it the company agrees to put plaintiffs on the same basis as to contingent compensation as agents in "any other large city." The company, insists that the clause has no applicability for the reason that the higher rate of contingent commission provided therein was intended and understood to apply only in case certain fire insurance companies, then acting together under a voluntary association known as the "Eastern Union," should grant to agents in some other large city a higher rate of contingent commissions than 5 per cent., and also because the Boston agents, who are alleged to have received 10 per cent., were not in fact agents of the company in Boston, but were in fact

managers of the defendant's Boston department. The District Court, in a very well considered opinion filed in the case [44 F.(2d) 567], rejected both contentions—holding the challenged provisions of the contract not susceptible of the construction claimed in behalf of the company, and that the words "the agents in any other large city" were intended to refer only to the company's agents, and to prevent discriminatory treatment between the company and its agents, and likewise held that giving consideration to all the evidence, there was no marked difference in the status, with relation to the company, of the Boston agents and the Baltimore agents. In his opinion discussing this phase of the case, Judge Coleman said:

"The court thinks that the differences are differences of form and not of substance. If we look to the scope of territory, the authority, both general and special, the relative size of the business, the powers, such as the power to adjust losses, and innumerable other powers, the court is forced to the conclusion that the difference is one largely of name, and the actual difference is not one that should put the Boston agent in a different classification."

In respect to both questions, we are of opinion that the District Court was clearly right. The ground on which the company seeks to build its case is that the written contract in suit was a standard form of contract used by fire insurance companies who were members of the Eastern Union; that this standard form had been agreed upon between the companies and their Baltimore agents, and that while the contract as drawn did not include the Eastern Union as a party, a copy was required to be filed with it; that the purpose of the contract was to correct abuses in the fire insurance business, and to create uniformity between the companies and the agents, especially in the matter of compensation, and that having been adopted in Baltimore, it was intended to be put into effect in the other large centers of population; and that its provisions were to apply only in those communities in which it was adopted. It was never adopted in Boston for the reason that such an agreement between the companies and the agents there was found not to be practicable, and companies and agents were left free there to make their respective contracts. The company therefore insists that the true interpretation of the contract with relation to extra compensation is to be had by reading into the clause in question language which will make it appear that addi-

tional compensation is permissible only where the Eastern Union; that is to say, the voluntary association of insurance companies, granted to agents in large cities in which the "Union" operated greater compensation than 5 per cent., but it seems to us this reasoning is more sophistical than sound, and is not supported either by the contract itself, or through extrinsic evidence introduced to explain its provisions. The contract is between the company and plaintiffs, and all of its vital parts embrace only agreements between these two. The obligations which the agent undertakes are set out at length, and the commissions which he shall receive are fixed, as is also the promise of the company to pay them. The references in the contract itself to the Eastern Union are wholly unrelated to the question of compensation or commission, and the extent to which the Eastern Union figures is more particularly with relation to the method of conducting the business, the establishment of ethical standards, and provisions restraining its members from competing in the respective local fields over the heads of their respective agents, so that it seems to us very clear that it would be a forced conclusion to hold that the provision in the contract agreeing to pay the agent additional compensation is effective only in the event all other companies embraced in the "Union" should grant higher compensation to their agents in some other large city. The contract seems to us very clearly to import an obligation on the part of the company to pay its Baltimore agents a higher rate of contingent commissions whenever it contracted to pay a higher rate to its agents in any other large city, and that any other construction would do violence to the plain language of the contract. But even if we should feel, as apparently the District Court felt, that there is ambiguity in the clause, and that this ambiguity should be clarified by extrinsic evidence, a careful review of such evidence appearing in the record, convinces us that the construction reached above is fully sustained.

■ We are also of opinion that the proof establishes that the company did pay a higher rate of contingent commissions within the meaning of the contract to its Boston agents. There is no dispute that these agents received 10 per cent., but it is suggested that because their duties were more important and their services different, this payment to them has no applicability, and this we likewise think is not the case. Both the Boston and the Baltimore agents had imposed upon them the obligation of obtaining policies of insurance; both were authorized to issue and deliver and cancel policies and to collect premiums, and each was responsible for the payment of premiums on policies written. Each appointed solicitors or agents to get business, and each had a large territory in which the agency operated. Each represented other insurance companies to whom they gave business, and each was largely chargeable with its own expenses of getting business. In these circumstances, the contract must be considered breached, and the right to additional compensation, under the clause in question, recognized and enforced, but as intimated above, only to the extent that demand therefor was seasonably made.

■ At the conclusion of the evidence, the company asked the court to instruct itself, sitting as a jury, to find that plaintiffs could recover only in the event that their ignorance of the fact of higher payment to the Boston representative was caused by the willful and intentional fraud of the company, and also that if the plaintiffs made no inquiry after the execution of the contract and before three years prior to the institution of the suit as to the commission paid the Boston representative, the statute of limitations would be applicable, and that the plaintiff could not recover if the fact that the defendant was paying its Boston representative more was at all times widely known throughout the insurance trade, or was readily ascertainable upon inquiry, but the trial court rejected this view of the law, and held instead that the nature of the contract and the relationship of the parties made the silence of the company in itself fraud within the meaning of the statute, and also held, for the same reasons, that there was no duty of inquiry on plaintiffs. This we think was error.

As was pointed out, plaintiffs were the company's policy-writing agents in Baltimore City from 1914 to 1929. The suits were begun the 22d of December, 1928. Ordinarily, therefore, damages accruing from breach of contract occurring prior to December 22, 1925, would be barred by the Maryland statute of limitations, Code, article 57, § 1. To avoid the effect of the statute, plaintiffs invoke section 14 of the same article, which is as follows:

"In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

In the trial of the cases, it developed from the evidence that the annual statements upon which the commission was based, though provided to be made by the company, were in fact first made each year by the plaintiffs, and checked by the company, and the commissions figured accordingly. It further appeared, quite clearly we think, that plaintiffs at no time during the eleven or twelve years they claim to have been in ignorance of the arrangement between the company and its Boston agent, made the slightest effort or inquiry of any kind to ascertain what this arrangement was, and we think it abundantly appears that the slightest inquiry on their part at any time would have developed the true facts, as was the case when the inquiry finally was made. The decision on this point, therefore, must be reached in the light of this evidence, and viewed in this aspect, we think the lower court should have instructed itself substantially as asked by the company. The Maryland statute by its own terms is made to apply only where two conditions are shown to exist; that is to say, where one party has been kept in ignorance by the fraud of the adverse party, and where he has himself exercised usual and ordinary diligence in the discovery and protection of his rights. There is no suggestion that the company was guilty of willful fraud. Apparently the compensation paid its Boston agent was fixed prior to the making of the contract sued on, and so continued after the failure of the "Union" to secure conformity there. This failure was apparently well known in the insurance world, and of itself should have put plaintiffs on inquiry. It is true the company did not affirmatively disclose the terms of its Boston contract, doubtless for the same reasons on which it now defends this suit, but apparently it made no effort to conceal the fact. Plaintiffs, on the other hand, made no inquiry. Indeed, the evidence seems to show that plaintiffs themselves overlooked and forgot the contingent provision of their contract during most of the period in dispute.

In our opinion the relationship of the parties was that of principal and agent, so that in the matter of compensation, they dealt at arm's length, and in this view of the matter, we think it a misnomer to describe the relationship as confidential or profit-sharing. These terms would have been applicable perhaps in a case in which the agent's commission was increased with the profits of the business, and the amount of the profits was peculiarly within the knowledge of the principal, but that is not this case. Here there was no question of secret profits, or unknown cost of doing business. The additional compensation which plaintiffs claim, was dependent upon whether the company increased other agents' compensation, and while this knowledge was in the first instance that of the company and the agent receiving the increase, all of the evidence tends to show that in this instance there was never any secrecy about it, and the fact was always available to the plaintiffs if they had made the slightest inquiry. It is perhaps correct to say that their failure to make inquiry before that date was due to their oversight of the particular clause in the contract, but this does not excuse them, because having solemnly entered into the contract, they are presumed to have known its provisions. Under these circumstances, we have reached the conclusion that the statute last quoted may not be pleaded to avoid the effect of the statute of limitations.

Putting aside for the moment the question whether the statute requires a showing of actual fraud, we think it perfectly clear that it enjoins upon a party invoking its terms a showing of diligence, and if in the exercise of diligence, the fraud of the adverse party might have been discovered, the failure to exercise it is fatal to the right after the period of limitations has run. And we find nothing to the contrary in the interpretation of the statute by the Court of Appeals of Maryland. In the case of Peoples v. Ault, 128 Md. 401, 97 A. 711, the plaintiff was employed on monthly wages and 10 per cent. of the net profits of the business. In the settlement between them, the employer reduced the profits by illegal expenditures which he concealed. The Court of Appeals of Maryland held that in such cases the statute of limitations would not defeat recovery, but this was a case of actual fraud, and this, with or without the statute, would have stopped the running of the limitations. So in Anderson v. Watson, 141 Md. 217, 118 A. 569, the correct wages of the employees of a company had been continuously withheld by the use of false weights under the exclusive control of the employer, and so manipulated that a detection of the fraud was humanly impossible, and it was held likewise that under these circumstances, the statute of limitations would not be a bar.

But in the case here, there was, as has already been said, admittedly no fraud in fact. There is not even a suggestion that the company was purposely silent on the subject of its arrangement with its other agent. There is on the contrary a strong inference that it

regarded its relationship as to compensation with its Boston agent as not controlling under its contract with its Baltimore agents. If this be true, it had not even the motive of concealment. When the contract in suit was made, it was anticipated that the same sort of contract would be made with the company's other agents in other large cities, including Boston, and plaintiffs' principal witness, testifying, said: "We were assured that the closing with Boston was a matter of days or weeks, and that Boston would come under the same contingent commission." There is nothing in the record to impugn the good faith of that assurance. The difficulties arose later, and the evidence shows that although an effort was made, the uniform contract could not be put into effect in Boston, and plaintiff says it then and there became the duty of the company to notify it accordingly, but we think there was at least just as much obligation on the plaintiff to make inquiry to determine whether or not that which they supposed would be done had been done, as it was the obligation of the company to advise plaintiffs it had not been done, and this, it seems to us, is the least that may be said as to the effect of the language of the statute. It imposes as a first condition the establishment of fraud on the opposite party, and, as a second, diligence on the moving party, and we think the record in this case discloses neither the one nor the other. See Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Boyd v. Beebe, 64 W. Va. 220, 61 S. E. 304, 17 L. R. A. (N. S.) 660; State v. Henderson, 54 Md. 332; Harper v. Harper (C. C. A.) 252 F. 39; Stieff v. Ullrich, 110 Md. 629, 73 A. 874; Kinder v. Scharff, 231 U. S. 517, 521, 34 S. Ct. 164, 58 L. Ed. 343.

Reversed and remanded.