# ROY ANDERSON et al.

## vs.

# HUGH WATSON et al.

*Fraud—Suit for Accounting—Equity Jurisdiction—Weighing of Coal Mined—Discovery—Misjoinder of Parties.*

On a bill by employees of a coal mining company, averring fraud on the part of the company, throughout a period of fifteen years, in weighing the coal on inaccurate scales, and thereby depriving plaintiffs of part of the compensation to which they were entitled, *held* that the company, in failing, over so long a period, to discover the inaccuracy in the scales, was guilty of negligence so gross that fraud might be inferred, or that the company actually knew and intended the scales to be inaccurate.                                                    p. 228

That a coal mining company pleaded guilty to the charge of operating inaccurate scales does not justify an inference of fraud in so doing, since guilty knowledge or fraudulent intent are not necessary ingredients of the crime created by the statute.                                                    p. 228

It cannot be assumed that for fifteen years a coal mining company continuously withheld from its employees, without their knowledge or consent, by means of false weights, agencies, and instrumentalities in its exclusive control, compensation justly due them, to its gain and their loss, without assuming also that it knew and intended to do what it did.     p. 229

Knowledge and intent are mental phenomena which, in the case of a corporation, can only be inferred from the acts of its agents.                                                    p. 229

It is not necessary, in establishing the knowledge and intent essential to a charge of fraud, to show such knowledge and intent by direct evidence, but they may be inferred from the conduct of the parties.                                                    p. 229

When an action at law will furnish an adequate remedy, equity does not assume jurisdiction because an accounting is

demanded or needed, nor because the case involves or arises from fraud. p. 232

Fraud charged against a coal mining company is not in itself a subject of equitable jurisdiction, when it amounts to no more than a claim that the coal mining company defrauded the complainants in weighing the coal which they mined, and that it is consequently indebted to them for the difference between the amount paid them according to the weights admitted and posted by the company and the amount due for the coal actually mined by them, this merely amounting to a claim for compensation for work done, for which full and complete relief could be obtained in an action at law. p. 232

Where defendant coal mining company kept the only permanent record of the coal taken from its mine, and it alone was in a position to know how much coal its employees had mined, the statements posted by it in this regard being false and misleading, so that, when the employees finally discovered the fraud, they neither knew nor had means of knowing how much the company owed them on account of coal mined by them, unless they could learn this from the records of the company, such employees, suing to obtain an accounting by the company, were entitled to a discovery of the company's accounts and records. p. 233

The expressions, "great complication" and "difficulty in the way of adequate remedy at law," when used in connection with the question of the right to an accounting in equity, may be taken to mean such an account as a court of law, with the aid of all the legal machinery at its command, is unable to solve, so as to do substantial justice between the parties. pp. 233, 234

A "fiduciary" or "confidential" relation, such as will confer jurisdiction on a court of equity in matters of account, exists when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence, the rule embracing both technical fiduciary relations, and those informal relations which exist whenever one man trusts in and relies on another, the origin of the confidence reposed being immaterial. p. 234

Where coal, which measured the compensation to be paid to the men who mined it, was weighed by the mining company on its own scales and by its own agents, out of the presence of the miners, who were, by the necessities of the case, precluded from witnessing the operation of weighing, and who were as a practical matter obliged to rely on the good faith of the company, there was such a fiduciary and confidential relation between the parties as gave to a court of equity jurisdiction of a proceeding by certain of the miners against the company for an accounting.    p. 235

That, in the exercise of the powers conferred by Code, art. 75, secs. 99, 100, to require the production of books or an answer to a **bill of discovery,** a court of law could effectually solve the account between the parties, did not oust the jurisdiction of a court of equity, the powers thus conferred not being called into existence until after a suit has been actually brought, and the plaintiff, unless informed of the extent of his claim, being unable to bring an action at law thereon, and being therefore unable to reach a position in which he could avail himself of these provisions.    p. 234

Persons employed by a coal mining company at different times, whose contracts of employment were separate and independent, cannot join as parties plaintiff in a suit against the company for an accounting as to wages due, merely because they were all at some time employed by defendant and that they were each defrauded, though not to the same extent, by similar methods, involving the use by the company of defective and inaccurate scales in weighing the coal mined by them.
pp. 235-237

In a suit for an accounting as to wages due by a coal mining company to plaintiff employees, based on the use by the company of inaccurate scales for weighing coal, it was improper to join as defendants, with the company, other employees, alleged to have aided in defrauding plaintiffs, and also employees who not only took no part in the fraudulent acts, but were themselves injured thereby, and as against whom no relief was asked.    p. 237

*Decided June 21st, 1922.*

Appeal from the Circuit Court for Allegany County, In Equity (HENDERSON, J.).

Bill by Roy Anderson and others against Hugh Watson, the Consolidation Coal Company, and others, for a discovery and accounting. From a decree sustaining a demurrer to the bill, plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*John M. Henry* and *Charles T. Clayton,* with whom were *J. Philip Roman* and *Fuller Barnard* on the brief, for the appellants.

*A. Taylor Smith* and *W. Ainsworth Parker,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The appellants in this case are coal miners who have severally at various times, between October, 1902, and October, 1917, been employed by the Consolidation Coal Company in its coal mine No. 3 at Hoffman, Allegany County, Maryland, in cutting, mining, and loading coal. For their labor each miner was paid according to the quantity of coal mined by him, which was ascertained by weighing the cars containing the coal so mined, which was loaded into them as it was mined, on scales operated by the Consolidation Coal Company. The complainants allege that the scales so operated by the coal company were inaccurate, and that as a result of their inaccuracy they were credited with and paid for less coal than they actually mined. That condition, they say, existed continuously between the dates to which we have referred, and they further say that the Consolidation Coal Company has in its possession records showing the quantity of coal mined by each of the complainants, and that the information contained in these records, which is essential to the ascertain-

ment of the loss suffered by each of the complainants as a result of the inaccurate scales, cannot be obtained by them from any other source. They therefore demanded of the coal company that it discover the information contained in said records, showing the amount of coal respectively mined by each of the complainants, and that it account to each of them for the compensation withheld from them and retained by the company, being the sum due them for the difference between the amount of coal credited to them in accordance with the registration of the inaccurate scales, and the amount of coal actually mined by them, and they accordingly filed in the Circuit Court for Allegany County a bill of complaint against the Consolidation Coal Company, certain employees and former employees of that company, and certain other miners who were employed at the mine during the period referred to and who were all affected in the same way by the error complained of by the appellants, asking for such discovery and accounting, and who have the same interests in the object of the suit. A demurrer to that bill of complaint was interposed and sustained, and an amended bill of complaint filed, to which certain of the defendants also demurred, and that demurrer was likewise sustained, and the complainants having indicated that they did not desire to make further amendments, the bill of complaint was dismissed, and from that decree this appeal was taken.

In the amended bill of complaint, which is the only one which we are required to consider, it is alleged that the plaintiffs are residents of Allegany County and bring the suit on behalf of all others having a common interest with them in its object; that certain of the defendants are sued as employees and former employees, weighmasters and servants of the defendant; that other defendants are sued as parties having an interest in the object of the suit, who have declined to join with them as parties plaintiff; and that the Consolidation Coal Company is a corporation incorporated under the laws of Maryland.

That the plaintiffs have respectively been employed as miners at various times and for varying periods between the first day of October, A. D. 1902, and the ninth day of October, A. D. 1917, by the Consolidation Coal Company, to which for convenience we will hereafter refer as the coal company, at its mine No. 3 at Hoffman, in cutting, mining and loading coal upon mining cars, and that the coal so mined was delivered by the coal company over its own mining tracks in its mining cars to and weighed upon its own mine scales, and "that thereafter such coal was dumped from such cars into railroad cars for shipment by rail to purchasers of such coal, or in wagons for delivery to local purchasers of such coal; and records of the purchasers of such coal, and of the weight of coal sold and delivered to them, to which records the plaintiffs have not, nor have had access, were solely kept by the defendant company"; that such work was performed entirely within the mine at a considerable distance from its principal entrance, in most cases extending a mile or more, and that the coal company required all miners employed in the mine on each working day to go directly to the place of labor assigned them, and remain there during their respective periods of labor.

That as the plaintiffs respectively loaded the mine cars they attached thereto a "check" as a claim for credit from said employer for compensation for services rendered by them in mining, cutting and loading the coal on such car, which compensation was based upon the weight of the coal thus loaded; and that thereafter the company removed said cars from the place of loading out of the mine and over the platform of certain mine scales where they were weighed by one of the coal company's weighmasters, who in each case, as he weighed the car, detached from it the miner's check and, upon a sheet provided by the defendant company, entered the serial number of the car and the weight of the coal found therein, as shown by the scales to the credit of the name or check number of the miner who had loaded the same within

said mine, and that, when those cars were removed from the mine, the miner who had loaded them had no further opportunity of seeing them or of knowing whether or not the weight credited to the miner whose check was attached to the car being weighed was correct.

That the record made by the weighmaster, showing the amount of coal credited to each of the plaintiffs and the serial number of the mine car in which such coal had been delivered to the scales was transmitted to the office of the defendant company, and a memorandum thereof posted in the weighing house, but no copy given to any of the miners; and that from such record the coal company computed and reported to the miners the weight of coal credited to them for the period covered by the report, and the earnings computed thereon, and paid them from time to time at the several rates from time to time agreed upon between them, and that that report and payment constituted all the accounting, notice or information furnished or available to such miners.

That the scales on which the cars of coal were weighed were provided with a large platform upon which was laid a short length of track over which the loaded mine cars passed. That such scales were kept in very bad adjustment and condition by the coal company, so that the ratio of balance of the scales became altered from the established ratio of design of said scales, and the counterpoise weights designed for use upon the scales became erroneous, so that they falsified the balance of such scales in such a way that they indicated one hundred and eleven pounds less than the actual and true weight of coal loaded upon and weighed within each car, and that in balancing the said scales each day the coal company's weighmasters removed from its place upon the balance beam of said scales the counterpoise hanger, and, after balancing the remaining parts of said scales, restored it to its place and used it while coal was being loaded, thereby causing the scales to weigh each mine carload of coal 620 pounds less than its actual weight, the counterpoise hanger preventing

the weight of coal to the amount of 620 pounds from appearing in the operation of weighing coal upon said scales.

That the plaintiffs had no means of verifying or disproving the correctness of the scales, or the operation of the same and were informed, upon application to the State Mine Inspector, whose duty it was to test said scales, that he had officially tested the scales and had found no error in them, and that the plaintiffs had no means of ascertaining such weights or of keeping accounts thereof for themselves, and trusted to the fairness of their employer and accepted the accounts furnished them as correctly stating the weight and compensation to which they were entitled. That in such reliance, having no opportunity to procure complete data, they kept no record for themselves of the number of mine cars loaded by themselves respectively, and they had no information or notice at any time which showed them that the scales were incorrect or had been tampered with until August 21st, 1917. That at that time the United States Bureau of Standards examined the mine scales and the conditions of weighing and accounting for coal at such mine and, on October 9th, 1917, the said bureau made a second examination of the scales and discovered as a result of these examinations the improper balancing of the scales and the use of incorrect weights to which we have referred, and that as a result the coal company was indicted for unlawfully neglecting to provide accurate scales upon which to weigh coal at said mine on the 21st day of August, 1917, to which indictment it pleaded guilty.

The bill then alleges, "that since this fraudulent balancing of the scales and fraudulent use and employment of false weights by said defendant company described in paragraphs eight and nine hereof, became known to them as described in the eleventh paragraph hereof, it has come to the knowledge of the plaintiffs, that such fraud as so described began many years before the date and time of its discovery and publication, to wit, before the 9th day of October, A. D. 1917,

and continued without interruption from the first day of October, A. D. 1902 to the 9th day of October, A. D. 1917, the day of the ascertainment of the existence and imposition of such fraud upon the miners by the defendant company, made by the representatives of the United States Bureau of Standards, as above set forth.

"That as a result of the use of the fraudulent and false weights hereinbefore described, and the improper and fraudulent balancing of the mine scales hereinbefore mentioned, the defendant company fraudulently failed to record and to credit upon each and every mine carload of coal mined and delivered to it by the miners, including the plaintiffs, a weight in no instance less than six hundred and twenty (620) pounds, and frequently and usually a weight in excess of seven hundred and thirteen pounds, of coal mined, cut, loaded and delivered to said defendant by said miners in said mine, for which said defendant company should have accounted and upon which said defendant company should have computed and paid said miners respectively the compensation agreed between them; but by this fraudulent concealment as hereinbefore set forth, said defendant company, through the operation of said scales, did not show, record, credit, compute nor pay, but retained the compensation so due said miners and still retains the same." It then states that the accounting of the mining operations is very complex, involving many transactions extending over a term of more than fifteen years, and including many different rates of compensation at various times computed, and the ascertainment of the sum due involves an examination into the number of mine cars loaded by and the weight of coal credited to the plaintiffs and "into the weight of coal sold and delivered by the defendant company, with comparisons through which the truth may be ascertained, and the amount justly due the miners, including these plaintiffs," be computed.

Upon these allegations the complainants asked for the following relief:

1st.    That the coal company be required to produce its books of accounts and records showing the coal accounted for as mined by, and the compensation paid thereon to, the miners employed at said mine during the period referred to, "and of coal sold and delivered to purchasers of coal from said mine by said defendant company between the same dates; and that it produce especially the records showing the weight of coal so sold and delivered, upon every day and year between the dates above mentioned, accounting for all and every mine carload of such coal as dumped from said mine, and that it produce especially the records showing the weight of such coal accounted for and paid for to such miners, upon every day and year between the dates above mentioned, and of all mine cars loaded within such mine by such miners, and all books, accounts, records, correspondence, memoranda or other data it has or can obtain which may throw light upon these transactions."

And 2nd, that the coal company be required to account to the plaintiffs for the amount of compensation earned by them which upon an examination of such accounts and records may appear to be justly due to them and to have been withheld from them by a failure to fully account and remit therefor.

The coal company demurred to the bill of complaint on the following grounds:

1. Because the bill failed to show any grounds for equitable relief; 2. Because it was multifarious; 3. Because there was a misjoinder of plaintiffs; 4. Because there was a misjoinder of defendants; 5. Because there was an adequate remedy at law; 6. That the relief prayed for was barred by laches and limitations; 7. Because the bill was indefinite, confusing, misleading and contradictory; and 8. Because of a want of jurisdiction in a court of equity to entertain the suit.

The same objection were also raised by certain employees and former employees of the coal company, who were made parties defendant.

It appears from what has been said that the questions with which we are required to deal are purely legal, since the demurrer, for the purposes of this opinion, concedes the truth of all facts properly pleaded in the bill of complaint, and that the main and controlling questions are these: 1st. Are the facts stated in the bill, if true, sufficient to entitle the plaintiffs to relief in equity. 2nd. Is there a misjoinder of parties plaintiff or defendant.

We must assume that from 1902 to 1917 the coal company, in operating its Hoffman mine No. 3, employed the appellants to mine coal under contracts which provided that they should be compensated for such labor according to the quantity of coal respectively mined by them; that the coal was weighed, out of the presence of the miners, on scales and instrumentalities owned and exclusively controlled by the coal company and operated by its agents and employees; that its situation in relation to its employees in the operation of weighing the coal mined by them, which measured the compensation which by its contract it was to pay them, was such as to impose upon it the duty of using the highest degree of care and diligence to see that the scales used to determine the weight of the coal so mined were, when so used, accurate; that notwithstanding that obligation, the scales, as operated by the agents of the company employed by it for that purpose, were so false and inaccurate that for a continuous period of fifteen years they indicated that each car of coal mined by the appellants weighed at least 620 pounds less than its actual weight, and that that practice only terminated when the company was indicted for and pleaded guilty to a charge of violating a statute which required the company to maintain accurate scales for weighing the coal mined by its employees, and that its employees then knew for the first time that the scales were false and inaccurate, and that the inaccuracy of the scales was discovered through inspecting them on two occasions in 1917; that as a result of these errors, the miners were, over a period of fifteen years wrongfully deprived of compensation

due them for at least 620 pounds in every mine carload of coal mined by them, which compensation was and still is retained by the company, although it had pleaded guilty to operating inaccurate scales in this mine on the occasion referred to in 1917; and further, that the coal so mined and weighed was dumped into cars and wagons and sold by the company and records kept of the weight of the coal so sold; and that although the scales were inaccurate, the State Mine Inspector had tested them during the period referred to and had approved them as accurate and thereby aided in misleading the appellants into a belief in their accuracy.

Whether these facts are really true, or whether they can be supported by proof, are questions not now before us, since we are dealing only with a "case stated," in which we must assume that all facts stated which are relevant and material to the issue are true, and whether such facts actually exist or not is not involved in this inquiry. So regarded, the facts to which we have adverted compel one of two conclusions, either that the company, in failing to discover over so long a period so striking an inaccuracy in its scales was guilty of negligence so gross that fraud may be inferred from it (*Wilson v. York and Md. R. R. Co.*, 11 G. & J. 58), or that the company actually knew and intended the scales to be inaccurate. And in arriving at this conclusion we do not infer any guilty knowledge or fraudulent intent from the fact that the company in 1917 pleaded guilty to the charge of operating inaccurate scales at the mine, since such knowledge or intent are not necessary ingredients of the crime created by the statute, but we are affected rather by the conviction that any person who for so long a period, by means of instrumentalities and agencies within his exclusive control, wrongfully deprives another of money, credit or property under the circumstances of this case, must at least, in the first instance, be presumed to have known and intended the consequences of his acts.

We cannot assume, as we are asked to do by the coal company's demurrer, that for fifteen years that company con-

tinuously withheld from its employees, without their knowledge or consent, by means of false weights, agencies, and instrumentalities in its exclusive control, compensation justly due them, to its gain and their loss, without assuming also that it knew and intended to do what it did. On the other hand, in the face of their statements that they knew nothing of the short weight, and considering the fact that the conditions resulting in the false weights were so latent as to deceive even the officials charged with the duty of inspecting such scales for the State, we cannot assume that the employees of the coal company were guilty of negligence in failing to discover the false weights. We cannot say, under such circumstances, that the company had no knowledge of the false weights nor that it had no intention to deceive. Knowledge and intent are mental phenomena which, in the case of a corporation, can only be inferred from the acts of its agents. It seldom happens that a person, natural or corporate, overtly admits or declares, either orally or in writing, an intention to perpetrate a fraud, and it follows that the existence of such an intent can, in many cases, only be known from inferences drawn from the conduct of its agents.

It is not necessary, in establishing the knowledge and intent essential to a charge of fraud, to show such knowledge and intent by direct evidence, but they may be inferred from the conduct of the parties. *Sisk v. Garey,* 27 Md. 417. And if we assume that the company over a long period of years intentionally deprived and withheld from the plaintiffs, without their knowledge, compensation justly due them, under the circumstances of this case, fraud may be inferred from such conduct on its part.

The appellees, in their contention that the allegations of the bill are not enough to charge fraud, rely upon the case of *Daab v. New York Cent. R. R. Co.,* 70 N. J. Eq. 499, but without adopting the views expressed in that case, it is sufficient for us to say that it is not in conflict with the conclusion reached here. The allegation with which the court was deal-

ing in that case charged that the defendant had over a period of years rendered to the complainant false "way bills," which the complainant knew were false when rendered, but which neverthless he accepted, although under protest, and whatever purpose the defendant may have had to deceive the complainant by means of such false way bills failed because the complainant knew of the short weight at the time the bills were rendered, and complained about it then. The court there held that, because false way bills did not actually deceive the complainants, and the deceit was to that extent unsuccessful, that the fraud was not consummated and therefore was not cognizable in a court of equity. The distinction between that case and this is that here the deceit was successful and the complainants knew nothing of the false weights for fifteen years, while there it was unsuccessful and the complainants there knew of it at the very time it occurred.

The views which we have thus expressed rest upon principles which appear to be undisputed, and which have been frequently stated by this Court. *Fried* v. *Burk,* 128 Md. 548; *Boyd* v. *Shirk,* 125 Md. 175; *Miller's Equity,* sec. 93.

It is next contended that, whether upon the facts stated there was fraud or not, the bill should have been dismissed because, since the complainants only seek money damages, they have an adequate remedy at law. This proposition is the converse of the appellants' contention that on the same facts they are entitled to a discovery and accounting, and as the two propositions, while in irreconcilable conflict, invoke the sanction of the same legal principles, differing only in the manner in which we are asked to apply those principles, we will deal with them together.

In considering these questions it must be remembered that the fraud complained of did not result in depriving the complainants of any property which had been intrusted to the coal company by or for them, but in concealing from them the fact that they were entitled to receive from that company compensation for services rendered by them to it, which it had

withheld from them, and the inquiry therefore is whether that fraud was of such a character as to confer upon a court of equity jurisdiction to grant the relief prayed in this case. It is said, somewhat loosely, that equity has jurisdiction to relieve in all cases of fraud where the injury is of a private nature. 21 *C. J.* 106.

Notwithstanding that general definition of the extent of equitable jurisdiction in matters of fraud, obviously there are many cases of fraud in which equity either has no jurisdiction or in which it will decline to exercise it, and it would perhaps be less misleading to say that courts of equity will exercise jurisdiction in all cases of fraud where their intervention will result in avoiding the consequences of the fraud, where those consequences are injurious to the party complaining. 21 *C. J.* 107; *Beach, Mod. Eq. Jur.* sec. 65; 10 *R. C. L.* 317. And even to the rule as thus stated, it is recognized by the decided weight of authority, there are exceptions, as for instance, cases in which there is a full, adequate, and complete remedy at law. It is true that that exception is not recognized in England, and that the English rule has been followed in the decisions of some of the states (*Pomeroy, Eq. Jur.* sec. 914) but the rule generally followed in this country, and known as the American doctrine, has been thus stated: "The concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain, and complete." And it is said by the same author: "Where the primary right is legal and the remedy is also legal, a recovery of money simply, or of the possession of chattels, the jurisdiction is concurrent, and only exists when the remedy which the party might obtain at law is not adequate," and "even when the cause of action, based upon a legal right, does involve or present, or is connected with, some particular feature or incident of the same kind as those over which the concurrent jurisdiction ordinarily extends, such as fraud, accounting, and the like,

still, if the legal remedy by action and pecuniary judgment for debt or damages would be complete, sufficient, and certain—that is, would do full justice to the litigant parties— in the particular case, the concurrent jurisdiction of equity does not extend to such case. For example, whenever an action at law will furnish an adequate remedy, equity does not assume jurisdiction because an accounting is demanded or needed, nor because the case involves or arises from fraud." The principles thus enunciated are supported by the weight of authority and are in accordance with decisions of this Court by which we are controlled. *Richardson* v. *Stillinger*, 12 G. & J. 477; *Schank* v. *Schuchman*, 212 N. Y. 352.

Applying these principles to the facts of this case, the fraud charged is not in itself a subject of equitable jurisdiction, because it amounts to no more than a claim that the coal company defrauded the complainants in weighing the coal which they mined, and it in consequence is indebted to them for the difference between the amount paid them according to the weights admitted and posted by the company and the amount due for the coal actually mined by them. In other words the claim itself amounts to no more than a claim for compensation for "work done," for which full and complete relief could have been had in an action at law. It did not in any way or to any extent affect the status of the complainants or deprive them of any right, privilege, property, credit or claim which they had, but only hid from them the fact that they did have a claim against the company. Such a fraud is no more a subject of equitable jurisdiction than would be the fraud of a merchant in giving short weight to a customer, unless, as a result of the fraud, the complainants were prevented from asserting their claim at law. And this brings us to the next question, which is whether, under the facts of this case, the conduct of the coal company did have such an effect. If we concede the facts stated in the bill, the coal company kept the only permanent record of the coal taken from its mine, and it alone was in a position to know how much coal

the complainants had mined. It is true it posted from time to time a schedule showing the weight of each car of coal mined by the complainants, but not only were the weights thus posted false, but, as the miners had no reason to suspect that they were false, it would have been unreasonable to charge them with negligence in failing to keep a duplicate account of the weights recorded on these schedules. As a result of the company's conduct, therefore, when the complainants finally discovered the fraud, they neither knew nor had any means of ascertaining precisely how much the coal company owed them on account of the coal mined by them, unless they could learn from the records of the company how many carloads of coal they had mined. Under these circumstances, in our opinion, the complainants are entitled to the discovery prayed in the bill of complaint. *Pomeroy, Eq. Jur.,* 195 *et seq.* They ask however, in addition to the discovery, that the coal company be required to account to them for the amount of compensation appearing from its books and records to be due them.

The jurisdiction of a court of equity in matters of account extends to cases where the accounts are all on one side, as in this case, but where "there are curcumstances of great complication, or difficulties in the way of an adequate remedy at law," and also to cases where "a fiduciary relation exists between the parties and a duty rests upon the defendant to render an account" (*Pomeroy, Eq. Jur.,* sec. 1421; *Miller's Equity,* page 823), and the necessity for a discovery may sometimes furnish a ground for equity jurisdiction 1 *C. J.* 617. While these general principles are not questioned and may be regarded as established, the decisions applying them to the facts of particular cases are not uniform, and there is also some divergence of opinion as to the meaning to be given such expressions as "great complication," "difficulties in the way of an adequate remedy at law," and "confidential or fiduciary relations." Before attempting to apply the rule

stated to the facts of this case therefore, we will first consider the effect to be given those phrases.

Under the decisions of this Court the expressions "great complication" and "difficulty in the way of adequate remedy at law" when used in connection with an accounting in equity, may be taken to mean such an account as a court of law, with the aid of all the legal machinery at its command, is unable to solve so as to do substantial justice between the parties. 1 *C. J.* 620; *Miller's Equity,* sec. 721; *Oliver* v. *Palmer,* 11 G. & J. 426; *Adair* v. *Winchester,* 7 G. & J. 114; *Union Pass. Ry. Co.* v. *Baltimore,* 71 Md. 238; *Becker* v. *Lipps,* 131 Md. 301.

A "fiduciary" or "confidential" relation, when used in the same connection, exists "in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. The rule embraces both techincal fiduciary relations, and those informal relations which exist wherever one man trusts in and relies on another; the origin of the confidence reposed is immaterial." *Highberger* v. *Stiffler,* 21 Md. 338; *Peoples* v. *Ault,* 128 Md. 401.

Coming now to the facts conceded by the demurrer, we cannot say that a court of law can, under the circumstances of this case, afford the complainants an adequate and complete remedy, for while it may be true that, in the exercise of the powers conferred by sections 99 and 100, article 75, Code Pub. Gen. Laws, such a court could effectually solve the account betwen the parties, yet the powers thus conferred are not called into existence until after a suit has actually been brought, and unless the plaintiff is informed of the extent of his claim he cannot properly bring an action at law upon it, and could not therefore reach a position in which he could avail himself of the relief offered by these provisions, which were not designed to and have not the effect of ousting the jurisdiction of a court of equity in such a case as this. *Union*

*Pass. Ry. Co.* v. *Baltimore,* 71 Md. 238; *Carter* v. *Suburban Water Co.,* 131 Md. 95. In this case the complainants do not know how many cars of coal they mined, nor the rate of compensation agreed upon from time to time for their labor, and until they receive that information they cannot properly present their claim in a court of law.

Nor can there be any real question that there was a fiduciary and confidential relation between the parties to this proceeding. The coal which measured the compensation to be paid to the men who mined it was weighed by the company on its own scales and by its own agents, out of the presence of the miners, who were, by the necessities of the case, precluded from witnessing the operation of weighing, and who were as a practical matter obliged to rely on the good faith of the company. Under such circumstances the miners naturally and necessarily trusted and relied upon the company's good faith, and the company assumed the duty of dealing fairly with them. For these reasons, in our opinion, the complainants are entitled to the accounting prayed in their bill.

There is however, another and very much more serious ground of objection to the bill, and that is that there is a misjoinder of parties plaintiff.

The appellants were severally employed by the coal company at different times. Their employment was not joint but separate, and their contracts of employment were several and independent, and the only apparent connection or relation between them was that they were all at some time employed by the same corporation, and that they were each defrauded by it, not to the same extent, but by similar methods. Their contracts were separate, and their claims are distinct, nor would the fact, if it were a fact, that one of them was defrauded of compensation by false weights show that another employed at a different time was defrauded in the same way or at all. The complainants named in the bill in this case have under such circumstances no more right to

join in the same suit for the enforcement of their respective several claims than would the customers of a grain merchant who complained that by the use of false measures he had at various times through a number of years given them short weight to join in a bill to compel him to account to them for the shortage.

We could with propriety rest our conclusions on this point, upon the reasoning of the very able judge who decided the case below, but because of the earnest contention of appellants' counsel that the joinder of the complainants in this case is sanctioned by the decisions in *Simons Sons Company* v. *Maryland Telephone Co.,* 99 Md. 141, and *Bosher* v. *Richmond & Harrisburg Land Co.,* 89 Va. 455, we feel we should notice those cases. In the case of *Simons Sons Company* v. *Maryland Telephone Co. supra,* the complainants, four in number, each had a separate contract with the telephone company which was based in part upon the same ordinance, Ordinance No. 110, of the Mayor and City Council of Baltimore, and they were all identically interested in the construction and enforcement of that ordinance, and to that extent had a common and single interest which the suit was instituted to preserve. In the case of *Bosher* v. *Richmond & Harrisburg Land Co., supra,* the complainants, who had been induced by the same representations contained in a prospectus to subscribe to stock in a corporation, brought the suit to set aside these subscriptions on the ground that the representations were fraudulent, and they had therefore an identical interest. In this case the appellants complain, not of one, but of many fraudulent acts, each of which, if committed, gave to the person affected by it a separate claim against the company, and there was neither privity nor community of interest among them, except that they were all defrauded by the same person. To quote from the opinion of JUDGE HENDERSON: "Each plaintiffs' case will be *prima facie* made out by showing that the inaccurate weighing took place during the term of his employment and what happened in the thirteen year

interval would be a matter of perfect indifference to him and what happened at the time of the employment of the other. What possible joint interest, therefore, can these two plaintiffs have together? It seems to me that the statement of the facts destroys the idea that there can be a joint interest, and yet if the theory of the bill is correct, each one of these plaintiffs would be subjected to the costs of inquiring into what happened during the period of the employment of the others and during the thirteen year interval." And this conclusion is, in our opinion, in accordance with the general weight of authority. *Beach, Eq. Proc.* sec. 119; *Miller's Equity,* pages 94, 134.

There is also clearly a misjoinder of defendants. In addition to the Consolidation Coal Company, the appellants joined as defendants in this suit certain employees of that company, who are said to have aided in defrauding them, and certain other employees of the company, who not only took no part in the fraudulent acts but were themselves injured by them. No relief is asked against these former employees, and they should not have been joined as defendants in this suit.

Without further prolonging this opinion, and since it appears from the record that the appellants indicated that they did not desire to amend their bill of complaint, the decree appealed from will, for the reasons given, be affirmed, without prejudice to the rights of the several plaintiffs to institute separate proceedings in accordance with the views expressed in this opinion.

*Decree affirmed, with costs.*