**A. W. FEESER, Inc., v. AMERICAN CAN CO.**

No. 2027.

District Court, D. Maryland.

Sept. 17, 1932.

On Motion to Dismiss Amended Bill, Feb. 8, 1933.

562

Solon J. Carter, Bachelder & Bachelder, and Matson, Ross, McCord & Clifford, all of Indianapolis, Ind., and George S. Yost (of Niles, Barton, Morrow & Yost), of Baltimore, Md., for complainant.

Venable, Baetjer & Howard, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The bill of complaint in this case seeks discovery, accounting and decree for alleged overpayments of money under contract for the purchase of tin cans, caused by alleged fraud and deceit. The defendant has filed a motion to dismiss the bill on a number of grounds which may be summarized as: (a) Failure of the bill to allege facts justifying the relief sought; (b) fatal indefiniteness and want of particularity in the allegations made; and (c) limitations. The motion to dismiss, under the new Equity Rules (28 USCA § 723), is the substantial equivalent of the former practice of a demurrer to the bill.

The particular case is one of a sequence of eighteen cases filed in this court which are substantially identical with the exception that the plaintiffs are different and the contracts of purchase of tin cans from the defendant are of different dates. Like motions to dismiss have been filed in all the other cases. The case was fully argued orally and counsel for the respective parties have filed five separate elaborate briefs. After a study of the case, I have reached the conclusion that the bill must be dismissed and will, as briefly as possible, state the reasons for this conclusion.

The most important question raised is whether the facts alleged justify the recovery of the particular loss or damage sought in the prayer for relief, no other damages being alleged.

The essential allegations of the bill (much condensed and abridged) are as follows: The

plaintiff is a Maryland corporation engaged in the packing of fruits and vegetables in tin cans continuously since 1923. The defendant, the American Can Company, is the largest, or one of the largest, manufacturers in the United States of tin cans used by fruit and vegetable packers, and buys its tin plate for the manufacture of cans principally or exclusively from the American Sheet & Tin Plate Company, which is the largest or one of the largest manufacturers of tin plate in the United States. During the years 1923–1925, both inclusive, the plaintiff bought under written contract all its requirements of tin cans from the defendant. The contract was in printed form and uniform with similar contracts between the defendant and other canners of fruits and vegetables. The contract was called a "term contract" and covered a period of three years under which the American Can Company was obliged to sell, and the plaintiff was obliged to buy, all its requirements of tin cans for that period. The contract provided the basis for the price of all cans to be delivered, stated in quantities of 1,000 cans. The price varied for different sizes and styles of cans but a particular named price (for 1,000 of each size and type) was stated in the contract, subject only to one variable element, to wit, the "official price" of tin plate published from time to time by the American Sheet & Tin Plate Company. The contract further recited that the initial price per thousand for tin cans was based on a stated price in dollars and cents for a standard unit of tin plate of described size, quality and contents, which was referred to as a "base box." It was further provided in the contract that the initial price should be varied during the term of the contract by a readjustment of price as of the first of January of each year after the making of the contract, dependent upon the "official price" of tin plate published by the American Sheet & Tin Plate Company as of the first of January; and that all deliveries of cans during that year should be governed thereby. The variation in the ultimate price as so affected was stated in the contract in the form of a differential applicable to each size and type of can in lots of 1,000. This differential was stated to be based upon a readjustment of prices as follows: There should be no change in the initial price unless the "official price" of tin plate varied to the extent of at least 10 cents per base box from the basis per base box named in the contract; and for each such difference of 10 cents per base box there should be added to or deducted from the initial price the cor-

responding differential mentioned in the contract applicable to each size of can and a proportionate addition or deduction for each fractional difference of more than 10 cents. For illustration: The base box price of tin plate as stated in the contract being $5.50 and the initial price of No. 1 standard plain cans being stated in the contract at $15.30 per thousand, the differential applicable thereto was stated to be 18 cents for each 10 cents' variation in the base box price of tin plate; so that if after the execution of the contract the base box price of tin plate according to the "official price" of the American Sheet & Tin Plate Company on January 1st next, was $6, the delivery price of No. 1 standard plain cans would be 90 cents higher, that is $16.20 per thousand. And similarly, if the base box price declined to $5, the delivery price of No. 1 cans would be $14.40. This readjustment of delivery price, it was provided in the contract, should be made each year for the ensuing calendar year during the term of the contract and to affect all deliveries made thereunder.

The bill further alleges that the defendant, the American Can Company, explained to its customers that the reason for this variation in the price of tin cans was to eliminate as nearly as possible all fluctuation in can prices and to enable the canner to obtain the cans required by him at a price known to him in advance, thus enabling him to stabilize the costs and know his selling price before the goods were packed; and that such a variation in the delivery price was necessary from the standpoint of the American Can Company in that it could determine over a three-year period with reasonable certainty its manufacturing costs, selling costs and overhead and profit; but could not reasonably assume the hazard of fluctuations in the cost price of tin plate which amounted to more than 60 per cent. of the cost of the manufactured cans.

The bill further alleges (in paragraph 10) that the American Can Company through its authorized agents represented directly to the plaintiff and to the canning trade in general that the words "official price" for tin plate of the American Sheet & Tin Plate Company which shall be in effect on the first day of January of each year, meant the actual price which the American Can Company was required to pay for all tin plate ordered by it of the American Sheet & Tin Plate Company, and would be the cost price to it of all tin plate purchased during the ensuing year.

The bill further alleges (in paragraphs 11 and 12) that the plaintiff relied upon said representations and was induced thereby to execute the contract; but that said representations were false and fraudulent in that for a long period of time both before and after the making of the plaintiff's contract and during the running thereof, the American Can Company had continued to purchase tin plate at a price substantially less than the "official price" published by the Tin Plate Company; and that the American Can Company knew at the time of making the contract with the plaintiff that this practice was current and would be continued; and that during the whole period of the plaintiff's contract the defendant billed it for cans delivered and the plaintiff paid for said cans on the basis of the said higher "official price" instead of on the basis of the lower cost price of tin plate to the defendant.

Beginning with paragraph 14 of the bill of complaint, there is also alleged that another fraud was perpetrated by the American Can Company upon the plaintiff in that the American Can Company represented to the plaintiff and to the trade generally that it was selling tin cans to all its customers in the United States east of the western boundary line of Montana, Wyoming, Colorado and New Mexico, at the same uniform price irrespective of the number and amount of cans purchased and used, and that therefore the prices fixed in plaintiff's contract were as low as those at which the defendant was then selling its cans to other packers; the plaintiff relied upon said representations and was induced thereby to execute the contract but that the representations were false and fraudulent in that the defendant was, during said period, selling its cans to certain named term contract customers at lower prices than those charged the plaintiff in the contract, and that this practice constituted a secret discrimination in price against the plaintiff.

The bill further alleges that the fraudulent misrepresentations above set out were concealed by the defendant from the plaintiff and the trade generally and were not discovered by the plaintiff and could not, by the exercise of reasonable diligence, have been discovered, until during the year prior to the filing of the suits.

The relief prayed for in the bill is a discovery to the complainant of the actual price paid by the defendant for tin plate during the years of the plaintiff's contract, and an accounting of the differences which shall appear upon such discovery to exist between the amounts paid by the plaintiff for cans, and the amounts which the plaintiff should have paid under its contract with the defendant "upon the basis of actual price of tin plate to the defendant instead of the official price as promulgated, and that a decree may be entered for the amount so determined." The bill also separately prays for a discovery of the lowest prices at which the defendant sold its cans to any of its Eastern territory customers during the term of the plaintiff's contract at prices lower than those charged the plaintiff; and for a decree in favor of the plaintiff for any amount which, upon such accounting, shall appear to be due to the plaintiff, together with interest and costs.

Before considering in detail the several grounds for the motion to dismiss, it is pertinent to note in general the nature of the case disclosed by the bill as a whole. In the first place, it is to be noted that the only relations between the plaintiff and the defendant were those of vendor and vendee with relation to purchase of merchandise; that the contract of purchase was in writing; that it was completely performed by both parties in accordance with its written terms, and that the period of more than five years has elapsed since the closing of the relations between the parties. There was no relation of trust, agency or other fiduciary character between the parties at any time.

█ It is also to be noted that the bill is not for rescission or cancellation of the contract on the ground of fraud and could not be because the contract was completely performed. Nor is the bill one for reformation of a written contract. The case in its essential nature is a claim arising in tort for damages due to fraud and deceit inducing the making of a fully executed contract. Such a case is, of course, a typical one for a suit at law for damages and ordinarily equity has no jurisdiction in such a case. Equity jurisdiction is invoked and sought to be maintained on the ground that the remedy at law is inadequate in that it is essential for the plaintiff to have a discovery of the actual cost price to the defendant of the tin plate and on the further ground that an accounting is necessary because of the complicated method of fixing prices in the contract, and the computation of the different differentials applicable to the numerous deliveries, in consequence of which it is said a jury would not be able conveniently to determine a proper verdict. But the ultimate relief which is

asked is simply a money decree for damages to which the plaintiff is said to be entitled by virtue of the alleged fraud and deceit, and the discovery and accounting are only prayed for as preliminary and incidental thereto.

It is to be importantly noted that there is no allegation in the bill of any actual loss or damage suffered by the plaintiff, other than the overpayments which, it is alleged, were made by the plaintiff under the contract. That is to say, the plaintiff sets up as a measure of damages to which it is entitled (a) the difference between the prices actually paid and those which it would have been required to pay if the billing under the contract had been on the basis of *the actual cost* of tin plate rather than on the "official price" of tin plate as named in the contract; and (b) the difference between the prices paid by the plaintiff and those paid by more favored customers. The bill does not allege that the cans bought by it were of less value than the prices paid nor that similar cans could have been bought elsewhere at lower prices. No other damages are alleged.

It is obvious that if the plaintiff is not entitled to the measure of damages sought by the bill, it must be dismissed despite the prayers for discovery and accounting because they are only a means to the end. But even if the plaintiff's substantive law as to damages is sound, there is still the question of procedure, whether the relief is properly in equity or at law. In my opinion it is at least highly doubtful that equity has jurisdiction in this case. The substantive rights involved are legal, not equitable. Therefore, if equity has jurisdiction it must depend upon the real need for the equitable remedies of discovery and accounting. It would seem that discovery by the defendant of the actual cost of tin plate and of sale prices to more favored customers, is not absolutely essential to the plaintiff as the facts can presumably be established by taking the depositions of officers of the Tin Plate Company, and of the more favored customers, who are not parties to the case. And any necessary accounting to aid a jury could be given by referring the figures when learned, to an auditor, prior to trial. Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919. Under such conditions the best considered authority denies equity jurisdiction. See Buzard v. Houston, 119 U. S. 347, 7 S. Ct. 249, 30 L. Ed. 451; Pomeroy Eq. Jur. §§ 222–230; United States v. Bitter Root Dev. Co., 200 U. S. 451, 472, 26 S. Ct. 318, 50 L. Ed. 550; 1 C. J. 623; 53 A. L. R. 815; 18 C. J. page 1060, § 6. Compare Russell v. Clark, 7 Cranch, 69, 90, 3 L. Ed. 271; Kirby v. Lake Shore R. R., 120 U. S. 130, 7 S. Ct. 430, 30 L. Ed. 569; Anderson v. Watson, 141 Md. 217, 230, 118 A. 569. In my opinion the bill should be dismissed for this procedural reason unless the plaintiff requests a transfer to the law docket with appropriate amendments. But the defendant's motion to dismiss is based on the broader ground that no cause of action either legal or equitable is disclosed by the facts alleged in the bill, in that the only damages alleged are not recoverable either in equity at or law. This requires determination of the applicable rule of damages.

The form of the plaintiff's bill and the prayers for relief would seem to indicate that the plaintiff is relying upon two separate and distinct fraudulent misrepresentations and that the measure of damages claimed by it consequent upon the separate frauds might overlap each other, but in the supplemental brief by plaintiff's counsel this possible effect is disclaimed and it is said the bill is to be construed not as setting up two distinct frauds but only one integral fraudulent scheme of misrepresentation made by the defendant to the plaintiff to induce the plaintiff to execute the contract. While this construction of the bill is doubtful in view of the separate prayers for relief, yet I will accept it, because in my opinion the plaintiff is not entitled to the measure of damages set up in any of the prayers of the bill. The controlling law is, I think, to be found in the cases of Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 33 L. Ed. 279, and Sigafus v. Porter, 179 U. S. 116, 21 S. Ct. 34, 45 L. Ed. 113, which hold that the measure of damages in cases of fraud and deceit include only the direct consequences of the false representations which, in connection with a contract for the sale of goods, means the difference between the price paid and the actual value of the goods. And the Maryland rule is to the same effect. Standard Motor Co. v. Peltzer, 147 Md. 509, 514, 128 A. 451.

The theory of plaintiff's counsel, as elaborated in their supplemental brief, is that the contract *must be construed* as in effect a "cost plus" contract and so construed, there have been overcharges made by the defendant in the performance of the contract which the plaintiff is entitled to recover as its measure of damages. The case is thus sought to be analogized to the class of cases which is typified by Anderson v. Watson, 141

Md. 217, 118 A. 569, and Pendergast v. Reed, 29 Md. 398, 96 Am. Dec. 539. These cases are clearly distinguishable, in my opinion, because they do not present cases of fraud *preceding and inducing the making of the contract,* but are concerned with fraud in the *performance of a valid contract.* If the plaintiff's theory as to the construction and proper legal effect of this contract were sound, then I think it would follow as contended that the measure of damages asked for in the bill would be correct. But in my opinion the plaintiff's theory is not sound and cannot properly be applied to the situation alleged to exist. To justify the contention, it is necessary to rewrite the contract and to change the expression "official price" to read "actual cost." This is clearly a reformation of the contract which the bill does not seek. The essential nature of the case is a tort based on fraud and deceit. Reformation is ordinarily justified only where there has been a mutual mistake in the expression in writing of the terms actually agreed upon orally. There is authority to the effect that in a limited class of cases there may be reformation where there is mistake on one side and fraud on another. But in this case that consideration seems immaterial when the structure of the bill is obviously not one for reformation and where counsel, as I understand it, disclaim any contention that the bill is one for reformation.

■ On the contrary, plaintiff's supplemental brief impliedly contends that reformation is unnecessary because the term "official price" must be read in the sense of "actual cost" to the defendant; and because the term "official price" is a trade term of uncertain meaning and must be given the meaning that it was orally represented to have by the agents of the defendant. It is true that parol evidence is permissible to explain the meaning of uncertain technical or trade terms used in contracts. But this rule of evidence is not applicable here because the term "official price" as used in this contract, especially in the light of the circumstances alleged in the bill, is not uncertain or doubtful in meaning. It is a matter of common knowledge that manufacturers often publish a so-called list price or "official price" for their goods and it is not uncommon practice for manufacturers to grant discounts from this list or "official price" to certain classes of customers. See, for instance, United States v. *American Can Company* (D. C.) 230 F. 859, 884. The reference to the price of tin plate is inserted simply as a standard or

basis for charges and it is the "official price" that is so referred to. It is not disputed that the Tin Plate Company did in fact from time to time publish an "official price" and that the billing for deliveries under the contract to the plaintiff were charged to it upon the basis of that "official price." In view of the well known commercial distinction between such a price and a net price after allowing discount, there seems to me no warrant in permitting parol evidence of prior negotiations to convert the contract term of "official price" into the entirely different term of "actual cost."

■ There is no uncertainty in the construction of the contract as written or in applying the terms of the contract to the conditions which in fact existed. The contract referred to a definite standard which in fact existed. Plaintiff's contention is that the term meant something materially different. I cannot escape the conclusion that this is an effort to vary the written contract by preliminary parol evidence, and, therefore, excluded by the well known evidence rule. Parol evidence of fraud is admissible to *impeach* a contract as written but when admitted it may not be used to control or vary the contract as written unless the contract may properly be reformed. 22 C. J. § 1626, p. 1220; 56 A. L. R. 13, 150; 5 *Wigmore on Evidence,* § 2439. Especially is this rule applicable where, as here, the contract to be enforceable is required to be in writing under the Statute of Frauds (now the Uniform Sales Act, Maryland Code, Article 83, § 25). See Miller's Md. Equity, § 139. And it is also noted that the contract itself when produced by plaintiff's counsel contains the usual stipulation against prior oral representations or negotiations.

■ Furthermore, on the substantial contention of plaintiff's counsel that the contract should be construed and applied as a "cost plus" contract, it would require a great straining of the terms of the contract under the alleged facts to reach this conclusion even if the parol evidence rule did not otherwise forbid it. A "cost plus" contract as generally understood is one where the total cost to the vendor or contractor represents the whole payment to be made by the vendee, plus a stated percentage of profit; but in this case it is quite apparent that the cost of tin plate was only one of several factors of cost to the Can Company. Tin plate was the principal but not the only item of raw material used in the manufacture of cans,

and the Can Company also incurred the cost of manufacture and incidental expenses of selling, overhead, etc., which entered into the entire cost. The cost of the plate was only 60 per cent. of the total cost of the cans. While the contract itself was not filed with the bill of complaint, a copy of the printed form was submitted at the oral argument and is attached to the plaintiff's supplemental brief. Looking at the contract as a whole, there would seem to be no reasonable justification for interpreting it as a "cost plus" contract. The ultimate initial price of cans is definitely stated in dollars and cents and the only variable factor arises from a *subsequent* increase or decrease in the "official price" of tin plate as above described.

The views above expressed make it possibly unnecessary to consider other grounds for dismissal contained in the motion. But for the possible event of an amendment of the bill or other subsequent proceedings, I will express my present views as to the "indefiniteness of the bill" and "limitations," as grounds for dismissal.

■ The bill is said to be fatally defective in that it is indefinite and vague and wanting in particularity in the following respects: (a) The contract referred to is not annexed to the bill as an exhibit or set out fully in the body of the bill; (b) there is no statement as to the amount of the plaintiff's purchases; and (c) the alleged misrepresentations are stated so generally with respect to time and persons that it would be difficult to determine precisely which of them were made and relied upon by the plaintiff.

So far as the contract is concerned, that has in effect been supplied and made a part of the case. And with reference to the generality of the alleged misrepresentations it seems to me that it is specifically alleged that the misrepresentations were made to the plaintiff individually as well as to the trade in general. It is true, however, that the bill is lacking in information as to the quantity and times of the plaintiff's purchases under the term contract. Nor is there any allegation as to what variation in fact occurred in the "official price" for tin plate during the term of the contract; nor whether the variation, if any, in fact amounted to as much as ten cents per base box; nor is there any statement in the contract as to what amount of cans, if any, were purchased by and delivered to the plaintiff at the initial price stated in the contract, which under no conditions was subject to change until the first of January subsequent to the making of the contract, nor is the date of the execution of the plaintiff's contract stated although it is alleged that it was effective for the years 1923–1925, both inclusive. Then again, the contract as written states the initial price as a definite amount based on the definite stated price of tin plate per base box. The contract certainly does not expressly refer to this definite base box price as an "official price" of the Tin Plate Company. Perhaps by implication this is intended. There is at least the possibility of a reasonable distinction between deliveries, if any, made at the initial base price and those, if any, after a change to the amount of ten cents in the base box price. All this information, or much of it, certainly should be in the possession of the plaintiff, and, if the bill were otherwise maintainable, ought to be alleged for precision and definiteness. The explanation of this indefiniteness in the bill is probably due to the fact that there are eighteen separate bills by different plaintiffs differently situated as to quantities and times of deliveries and dates of contracts and the pleader very likely has contented himself with drawing a general form which would be applicable to all the cases with a minimum number of changes for the separate bills.

■ Under this motion the defense of limitations and laches is available to the defendant. See Hughes on Federal Practice, vol. 7, §§ 4220, 4132; Foster's Federal Practice (6th Ed.) vol. 1, § 183; Miller's (Md.) Equity Procedure, § 139; Wollensak v. Reiher, 115 U. S. 96, 5 S. Ct. 1137, 29 L. Ed. 350. It is at least a doubtful proposition under the allegations of this bill as to whether the plaintiff's claim is not barred by limitations. The applicable period in Maryland is three years, unless the case can be brought within the principle stated in section 14 of article 57 of the Maryland Code, which reads as follows: "In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered." This section makes applicable to suits at law the rule upon the same subject previously and still applicable in equity. In cases of concurrent jurisdiction between law and equity, limitations may be availed of in equity as in law. Hertle v. Schwartze, 3 Md. 383.

■ To meet the prima facie bar of the statute, the bill merely alleges in general terms

that the plaintiff did not know and by the exercise of reasonable diligence could not have known (until discovery in the last year) the untruth of the representations relied upon. The bill does not specifically allege how the discovery was made and why it was not made sooner, other than the general allegation that the prices of tin plate and of tin cans were not known to the public but carefully guarded as private by the Tin Plate Company and the Can Company (except that the "official price" of the Tin Plate Company was published every three months), and that the defendant "has at all times closely guarded such facts from the complainant and the canning trade in general and is now refusing to divulge the same." It is exceedingly doubtful whether these general allegations are sufficient to avoid the bar of the statute. See Hardt v. Heidweyer, 152 U. S. 547, 559, 14 S. Ct. 671, 38 L. Ed. 548, Richards v. Mackall, 124 U. S. 183, 187, 8 S. Ct. 437, 31 L. Ed. 396.

This Maryland limitation statute has recently been applied by the Circuit Court of Appeals of this Circuit in the case of Insurance Company of North America v. Parr, 44 F.(2d) 573. In that case the court held that affirmative diligence to discover the fraud complained of was required on the part of the plaintiff in order to bar the statute. The bill in this case is entirely lacking in any specification of what diligence, if any, the plaintiff exercised to discover the fraud. And the statute to be available to the plaintiff, also requires him to show affirmatively that he was kept in ignorance of his right of action by fraud of the adverse party. As to this, the bill is also lacking in particularity. And these comments as to the mere generality of the allegations of the bill would seem to be emphasized by the fact that publicity was given to the relations of the Can Company with the Tin Plate Company including this very matter of purchase of tin plate at a discount from the list price, during years prior to 1916, in the case of United States v. American Can Company, in this court in which Judge Rose, as district judge, wrote an extended opinion reported in 230 F. 859, 884. While this case may not have been known to the plaintiff individually, the bill charges in general terms that the purchase price of the tin plate was kept secret from the trade generally. It seems improbable that the trade generally was at least not on notice to make inquiry as to the continued relation between the two companies with respect to the sale of tin plate for subsequent years, if the customers of the American Can Company were importantly affected by the actual price paid for tin plate by the Can Company.

The plaintiff's case in this respect is not aided by the existence of any relations of trust or confidence between the parties such as that of agency or other fiduciary relation. The only relations were those of vendor and vendee of personal property. The plaintiff's contract was fully executed at the end of 1925. Since then apparently the parties have had no relations whatever. More than five years have elapsed since the complete termination of the contract and more than eight years since making the oral representations which induced the plaintiff to make the contract. These representations are alleged to have been made by various representatives of a large corporation. It is quite probable that the lapse of time in such circumstances might cause embarrassment to the defendant in its proof. Statutes of limitation are enacted as a matter of public policy to secure repose from controversy after a stated lapse of time. This case is one to which the statute is clearly applicable on this ground of public policy.

The bill in this case charges fraudulent and deceptive business practices on the part of the defendant which, if true, are entirely indefensible in the forum of business ethics. In that forum it would be regrettable if the charges were not answered on the merits. But in a court of law the plaintiff's bill must be disposed of in accordance with the well established rules and it would be contrary to law and public policy to require the defendant to answer the charge of fraud in the bill and thus bring about a long litigation which could have but one termination in the dismissal of the plaintiff's bill if the plaintiff is not entitled to the particular damages sought to be recovered in this case, and where no other damages are alleged to exist.

For these reasons the bill, in its present form at least, must be dismissed with costs to be paid by the plaintiff. An order to this effect will be signed upon presentation unless counsel desire to be heard with respect to the form of the order or any other matter appropriately now open for consideration.

### On Motion to Dismiss Amended Bill of Complaint.

■ This case now comes again before the court on the defendant's motion to dismiss the *amended* bill of complaint. On September 17, 1932, I filed an opinion in this case on the question raised by defendant's motion to

dismiss the *original* bill of complaint. The amended bill as now filed is perhaps sufficient to meet some of the objections to the original bill but, in my opinion, the amendments are not so extensive as to require a different ruling with regard to the sufficiency of the bill as a whole. It was said in the former opinion: "The case in its essential nature is a claim arising in tort for damages due to fraud and deceit inducing the making of a fully executed contract. Such a case is, of course, a typical one for a suit at law for damages and ordinarily equity has no jurisdiction in such a case. Equity jurisdiction is invoked and sought to be maintained on the ground that the remedy at law is inadequate in that it is essential for the plaintiff to have a discovery of the actual cost price to the defendant of the tin plate and on the further ground that an accounting is necessary because of the complicated method of fixing prices in the contract, and the computation of the different differentials applicable to the numerous deliveries, in consequence of which it is said a jury would not be able conveniently to determine a proper verdict. But the ultimate relief which is asked is simply a money decree for damages to which the plaintiff is said to be entitled by virtue of the alleged fraud and deceit, and the discovery and accounting are only prayed for as preliminary and incidental thereto. * * * Under such conditions the best considered authority denies equity jurisdiction. See Buzard v. Houston, 119 U. S. 347, 7 S. Ct. 249, 30 L. Ed. 451; Pomeroy Eq. Jur. §§ 222–230; United States v. Bitter Root Dev. Co., 200 U. S. 451, 472, 26 S. Ct. 318, 50 L. Ed. 550; 1 C. J. 623; 53 A. L. R. 815; 18 C. J. page 1060, § 6. Compare Russell v. Clark, 7 Cranch, 69, 90, 3 L. Ed. 271; Kirby v. Lake Shore R. R., 120 U. S. 130, 7 S. Ct. 430, 30 L. Ed. 569; Anderson v. Watson, 141 Md. 217, 230, 118 A. 569. In my opinion the bill should be dismissed for this procedural reason unless the plaintiff requests a transfer to the law docket with appropriate amendments."

This view of the original bill is equally true of the amended bill and the plaintiff's counsel in this case makes no contention to the contrary; and has made no request to transfer the case to the law side of the court.

A further fundamental deficiency of the original bill, as pointed out in the former opinion, was with regard to the relief that was asked which was limited to money payment for a particular measure of damages set up in the original bill. The measure of damages set up in the original bill was the dif-ference between the price of the cans as delivered under the contract, the price being based on the "official price of tin plate," and the smaller price which the plaintiff claimed should have been charged on the basis of the actual cost of tin plate to the defendant. It alleged no other loss or damage and asked for no other ultimate relief. And in the former opinion on this point, it was said: "The plaintiff is not entitled to the measure of damages set up in any of the prayers of the bill. The controlling law is, I think, to be found in the cases of Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 33 L. Ed. 279, and Sigafus v. Porter, 179 U. S. 116, 21 S. Ct. 34, 45 L. Ed. 113, which hold that the measure of damages in cases of fraud and deceit include only the direct consequences of the false representations which, in connection with a contract for the sale of goods, *means the difference between the price paid and the actual value of the goods*. And the Maryland rule is to the same effect. Standard Motor Co. v. Peltzer, 147 Md. 509, 514, 128 A. 451."

The amended bill makes some changes in the allegations with regard to plaintiff's damages. It is now alleged as follows in paragraph 17: "As a result of defendant's fraudulent acts as above indicated, complainant has been damaged by the amount of the difference between the prices it actually paid for cans and the fair value of said cans at said times, together with interest thereon; * * * That the complainant was induced, by the fraud aforesaid, to pay defendant's prices for cans which were at all times greater than the then fair value of said cans; and said fair value changed from time to time during the period herein involved, which changes were partially caused by changes in the cost of making cans and by changes in the prices at which like cans were sold to others. The matter of computing the damages, both general and special, as herein alleged, is complicated and of such a nature that the same could not be accurately determined by juries in actions at law, and the only adequate remedy to complainant is to have the same determined by a court of equity."

But the prayers for relief are almost the same as in the original bill. What is asked for is: (a) A discovery of "the cost to the defendant of tin plate from year to year during the years 1923–1925, inclusive; (b) a discovery of the lowest price at which defendant sold its cans to any of its 'term contract' customers in certain territory; (c) an accounting of damages, both general and special, or so much thereof as is equitable to be assessed, and a decree for damages which, up-

on accounting, shall appear to be due the complainant."

It is true that here the prayers do not, as in the original bill they did, limit the damages asked for to the difference between the prices paid by the plaintiff and the lower prices which they claim they should have paid; but the requested discovery of the cost to the defendant of tin plate and its sale price of cans to others would seem to indicate that the plaintiff is still relying on the original measure of damages.

It is true that there is now an allegation that the prices paid by the plaintiff to the defendant for cans delivered were greater than the *fair value* of the cans when delivered. This term "fair value" is uncertain and, to some extent, ambiguous and seemingly more so in the special circumstances here. Full argument was had on the motion to dismiss the original bill with respect to this very question of damages. It was defendant's contention that no damages were alleged in the original bill recoverable under the applicable law. The opinion stated what were regarded as the controlling cases which hold that the measure of damages in such cases is "the difference between the price paid *and the actual value of the goods.*" If plaintiff's counsel were now prepared to adopt this rule, it is difficult to understand why they should with apparent deliberateness have substituted the somewhat uncertain phrase "fair value" for the more definite expression "actual value." The difference between the two terms would seem to be accentuated under the special circumstances. Looking at the structure of the amended bill as a whole, further doubt is thrown on the intended scope and meaning of the phrase "fair value" as here used instead of the properly applicable term of "actual value." Taking the present allegation with regard to fair value of said cans in the context in the particular paragraph and in connection with the amended bill as a whole and with the history of the prior original bill, it seems to me that the present allegation is too ambiguous and uncertain in its implications as to what the complainant means by fair value to be within the rule of law as explicitly stated in the Supreme Court cases already referred to and to which attention of counsel for the plaintiff had been called in the former opinion.

Still again the ultimate relief prayed for is only a monetary decree for damages and the damages asked for are not limited to those to which the plaintiff is entitled in a case of this kind but for "the damage which, upon said accounting, shall appear to be due the complainant"; and the prayers for discovery are for "the cost to defendant of tin plate from year to year during the years 1923–1925, inclusive, and the lowest prices at which the defendant sold cans to others."

Taking the plaintiff's bill as a whole with respect to this allegation of damages, it seems to me that in substance it is merely a reiteration in somewhat different form and phraseology of the particular measure of damages which it set up in the original bill. And it seems to me that if plaintiff's counsel had desired to squarely adopt as their measure of damages the rule announced in the Supreme Court cases above referred to, the amended bill would have done so in all the circumstances with very much more definiteness and precision than is the actual case here. Ambiguities are to be construed against the pleader and this rule is especially applicable here in view of the original bill, the full arguments thereon and the former opinion herein.

The final question is what form of order should now be passed with regard to this amended bill. Should the bill simply be dismissed or should the case be transferred to the law docket with further amendment of pleadings under Rule 23 of the General Equity Rules (28 USCA § 723) and 28 US CA § 398. Neither party has requested this transfer and my understanding is that both parties oppose it. The position of the plaintiff is an insistence on the right to litigate the case in equity; that of the defendant is that the bill does not disclose a case either in equity or at law. If the bill in this case definitely and without ambiguity alleged as a fact the existence of damages within the applicable rule of Smith v. Bolles and Sigafus v. Porter, supra, it probably would be requisite to make the transfer even without the request of either party. But as already stated, it is at least very doubtful whether the plaintiff has definitely alleged such damages. Certainly no definite amount, even approximately, of such damages is alleged. The plaintiff's idea in this connection seems to be as stated by counsel in oral argument on the motion to dismiss the amended bill, that the damages are not determinable without the prior discovery which is asked for. This seems to me to emphasize the ambiguity of the allegation of the definite existence of damages within the rule because the discovery asked for is not for the actual value of the goods delivered (assuming but without deciding that a pray-

er for such discovery would be proper), but what is asked for is a discovery of the actual cost of tin plate to the defendant, which is quite a different thing. The confusion is seemingly due to the plaintiff's insistence on an improper measure of damages as the basis for relief. And the same thought is seemingly responsible for the plaintiff's insistence that equity jurisdiction is necessary by reason of the alleged complexity of the accounting as a means to determine the computable damages. If the plaintiff is entitled to the measure of damages which it insists upon, there would be more reason for its contention as to the necessary complexity of accounting.' But if the measure of damages to which the plaintiff is entitled is the difference between the price paid by it and the actual value of the goods received, the complication in accounting at once disappears; because the essential elements of proof in the plaintiff's case are, first, the fraud alleged as the inducement to the making of the contract, and sec-

ond, the actual value of the goods delivered; the plaintiff, of course, having within its own possession knowledge of the prices actually paid which indeed in the aggregate are alleged in the amended bill. Assuming, therefore, the plaintiff is in a position to prove as a fact that fraud alleged, the only further element of proof that it needs is the actual value of the goods delivered, and for this it is difficult to see why it needs either discovery or accounting unless that value is to be properly fixed by a comparison of prices paid and the price which the plaintiff contends should have been paid based on the actual cost to the defendant of tin plate.

Therefore, in all the circumstances, I do not think the case is one in which I should on my own motion and without request from either party, transfer the case to the law docket. It results that the bill should be dismissed, with costs to be paid by the plaintiff, and I will sign an order to that effect when presented by counsel.